AMERICAN GREETINGS CORPORA-
TION, Plaintiff–Appellant,

v.

Gerald A. COHN, Defendant–Appellee.

No. 86–3902.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 8, 1987.
Decided Feb. 17, 1988.
Rehearing Denied April 8, 1988.

Albert I. Borowitz, Barry L. Springel (argued), Jones, Day, Reavis & Pogus, Cleveland, Ohio, for plaintiff-appellant.

Daniel W. Hammer (argued), Thompson, Hine & Flory, R. Benton Gray, Cleveland, Ohio, for defendant-appellee.

Before LIVELY, Chief Judge, and JONES and GUY, Circuit Judges.

LIVELY, Chief Judge.

This appeal requires us to determine the reach of Ohio's long-arm statute in a somewhat unusual fact setting. The plaintiff is an Ohio corporation and the defendant is a nonresident shareholder who threatened a suit to have an amendment to the plaintiff's articles of incorporation declared invalid under Ohio law unless the plaintiff agreed either to rescind the amendment or pay the defendant a substantial sum of money. The plaintiff responded by filing this diversity action in the district court, seeking a declaration that the amendment is valid. The district court, without conducting an evidentiary hearing, granted the defendant's motion to quash service of process and to dismiss the action for lack of personal jurisdiction pursuant to Rule 12(b)(2) and (5), Fed.R.Civ.P. We reverse.

**I.**

American Greetings is an Ohio corporation with its principal place of business in Cleveland. The defendant is a resident of California who practices law there. He formerly was a resident of Ohio and is admitted to the Ohio bar. However, he has never practiced law or maintained an office in Ohio, and has never represented clients in Ohio. The defendant owns both Class A and Class B stock of American Greetings, having acquired the shares as a bequest from his father.

At the June 1985 annual meeting of shareholders an amendment to plaintiff's articles of incorporation was approved. The amendment addressed the Class B common shares, which carry ten times the voting rights of the Class A shares. Although as of the date of the vote the defendant was the owner of almost 2,000 Class B shares, he did not vote for or against the amendment.

Shortly after the amendment was approved the defendant began corresponding with plaintiff and expressing concern over the legality of the amendment. Over a period of nine months (August 1985 to April 1986) the defendant contacted the plaintiff on numerous occasions in writing, by telephone, through an Ohio lawyer, and through his brother, who lived in Ohio. These contacts are described in some detail in the complaint. Their general tenor was that the amendment to the articles was illegal and that the defendant insisted that it be rescinded.

On May 16, 1986, the plaintiff filed this diversity action in federal court in Ohio seeking a declaration that the amendment is legal and valid under Ohio law and binding on the defendant. On June 2, 1986, the district court, sua sponte, issued an order stating that it appeared that it lacked personal jurisdiction over the defendant, and that within ten days the plaintiff should either amend its complaint or transfer the action to an appropriate court. On June 30, 1986, the plaintiff filed an amended complaint.

In addition to describing the contacts as set forth above, the amended complaint alleged that "[i]n the course of, and as a result of, the meetings, correspondence and communications ..., Cohn threatened to

sue American Greetings to have the Amendment declared illegal and invalid under Ohio law unless American Greetings agreed either to rescind the Amendment or to pay Cohn a very substantial sum of money." The amended complaint further alleged that Ohio has "a strong interest in the adjudication of this controversy since the claim asserted by Cohn is a challenge to the corporate structure and governance of American Greetings, an Ohio corporation." Finally, the amended complaint alleged that "Cohn's claim, unless and until judicially resolved, will place a cloud over the rights and obligations of American Greetings and its shareholders to effectuate stock transactions in accordance with the provisions of the Ohio corporation laws and of American Greetings' articles of incorporation."

Cohn responded to the amended complaint by filing a motion to quash and dismiss, pursuant to Fed.R.Civ.P. 12(b)(2) and (5). On August 29, 1986, the district court granted the defendant's motion and dismissed the complaint.

In its memorandum and order granting the motion to dismiss, the district court found that the cause of action asserted by American Greetings was not based on "minimum contacts" with Ohio sufficient to support personal jurisdiction over Cohn. After reviewing the Ohio long-arm statute, Ohio Rev.Code § 2307.382, the court determined that the amended complaint did not satisfy its requirements, concluding:

> The mere ownership of stock in an Ohio company and the expression of strong reservations concerning the legality of a matter of legitimate shareholder interest do not involve a non-resident in the substantial business contacts required by Ohio Rev.Code § 2307.382. Cohn's actions relate solely to this ownership of stock he inherited in American Greetings. They are not the purposeful and substantial business transactions within Ohio contemplated by the Sixth Circuit in *In–Flight [In–Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220 (6th Cir.1972) ]. The exercise of jurisdiction over Cohn, under these circum-

stances, is unreasonable and offends traditional notions of fairness and justice.

## II.

### A.

The basic requirement for personal jurisdiction over a non-resident defendant has been clearly established since the Supreme Court's decision in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The holding in that case has been reiterated time and again by the Supreme Court:

> [D]ue process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

*Id.* at 316, 66 S.Ct. at 158 (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). As recently as last year the Supreme Court opened its discussion of this issue by quoting the above language from *International Shoe.* See *Asahi Metal Industry Co. v. Superior Court of California,* —— U.S. ——, 107 S.Ct. 1026, 1029, 94 L.Ed.2d 92 (1987). In *Southern Machine Co. v. Mohasco Industries, Inc.,* 401 F.2d 374, 381 (6th Cir.1968), this court identified three criteria to be satisfied if personal jurisdiction over a non-resident who is not generally engaged in activities within the forum state may be upheld under *International Shoe* and *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). These criteria are:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

If these criteria are satisfied, jurisdiction will be upheld if the facts of the particular

case are such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158.

The law of the forum state determines the extent of the *in personam* jurisdiction of a federal court sitting in a diversity case. *In–Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 224 (6th Cir. 1972). Ohio's long-arm statute, Ohio Rev. Code § 2307.382, provides in pertinent part:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> (1) Transacting any business in this state;

This court held in *In–Flight Devices* that § 2307.382 extends personal jurisdiction to the constitutional limits set by the Due Process Clause. 466 F.2d at 225. See also *R.L. Lipton Distributing Co. v. Dribeck Importers, Inc.*, 811 F.2d 967, 969 (6th Cir.1987) (The statute "has been construed to extend to the outer limits of due process."). When this determination has been made the question in a particular case is whether the jurisdictional reach of the forum state's courts can be extended to nonresidents consistently with due process. *Southern Machine Co.*, 401 F.2d at 376. As the court stated in *Lipton*, "thus an Ohio personal jurisdiction analysis becomes an examination of constitutional limitations." 811 F.2d at 969.

## B.

Without in any way departing from the principles enunciated in *International Shoe*, the Supreme Court has recently applied those principles to various fact situations in decisions that are instructive for the present case. In *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), the Court concluded that the "minimum contacts" requirement was not satisfied. In so doing, the Court discussed the difference between "specific jurisdiction" and "general jurisdiction" in two footnotes:

> It has been said that when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum, the State is exercising "specific jurisdiction" over the defendant. See Von Mehren & Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv.L.Rev. 1121, 1144–1164 (1986).
>
> \*      \*      \*      \*      \*      \*
>
> When a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the State has been said to be exercising "general jurisdiction" over the defendant. See Brilmayer, How Contacts Count: Due Process Limitations on State Court Jurisdiction, 1980 S.Ct.Rev. 77, 80–81; Von Mehren & Trautman, 79 Harv.L.Rev., at 1136–1144; *Calder v. Jones*, 465 U.S. [783] at 786 [104 S.Ct. 1482 at 1485, 79 L.Ed.2d 804].

*Id.* at 414 nn. 8 & 9, 104 S.Ct. at 1872 nn. 8 & 9. When the cause of action is related to or arises out of a defendant's contacts with the forum, *in personam* jurisdiction must be founded on a "relationship among the defendant, the forum, and the litigation." *Id.* at 414, 104 S.Ct. at 1872 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977)).

*Helicopteros* was a wrongful death action by four United States citizens' personal representatives against a Colombian corporation. The decedents were killed in a crash of one of the defendant's helicopters. The decedents were not Texas residents and the nonresident defendant's contacts with Texas consisted of a number of purchases of helicopters in Texas. These contacts involved one trip to Texas by the defendant's chief executive officer to work out details of a contract to purchase the helicopters, the actual purchase from Texas manufacturers, and training sessions in Texas attended by pilots and maintenance and management personnel of the defendant. The parties agreed that the cause of action neither related to nor arose out of the defendants' contacts with Texas. Thus, "general jurisdiction" was involved,

and the Court held that the contacts were not sufficient to satisfy due process.

In *Burger King v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), a Florida corporation sued a Michigan resident in a United States District Court in Florida. The suit was for breach of a franchise agreement which had been entered into as a result of the defendant's initiative. The Supreme Court upheld the district court's exercise of jurisdiction over the defendant. The Court reiterated the standard to be applied in a "specific jurisdiction" case: the defendant must be found to have "purposefully directed" his activities at forum residents and the litigation must result from injuries that "arise out of or relate to" those activities. *Id.* at 472, 105 S.Ct. at 2182. After noting several factors to be considered in determining whether an assertion of jurisdiction over a nonresident defendant comports with due process, the Court concluded that "[n]otwithstanding these considerations, the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Id.* at 474, 105 S.Ct. at 2183. While a defendant should not anticipate being haled into the courts of a foreign jurisdiction on the basis of "random," "fortuitous," or "attenuated" contacts, "[j]urisdiction is proper ... where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Id.* at 475, 105 S.Ct. at 2183 (emphasis in original) (citations omitted).

The Court stated that once it is determined that the defendant's purposeful acts caused minimum contacts with the forum state, these contacts "may be considered in light of other factors"; *i.e.*, the burden on the defendant, the forum's interest, the plaintiff's interest, and the interest of the interstate judicial system. *Id.* at 476–77, 105 S.Ct. at 2184. These factors are to be considered, however, under the rule that "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render

jurisdiction unreasonable." *Id.* at 477, 105 S.Ct. at 2185.

The third recent Supreme Court decision is *Asahi Metal Industry*, supra. In a products liability action brought in a California state court, a Taiwanese defendant brought Asahi, a Japanese manufacturer who provided a component part of a wheel that allegedly failed, into the case on a cross-claim for indemnification. The claims against the original defendants were settled and dismissed by the plaintiff, leaving only the indemnity action. Asahi was shown to do business on an international scale, although it had no agents or offices in California and made no direct sales there. The California Supreme Court concluded that Asahi's intentional act of putting its product into the stream of commerce, knowing that some of its components would eventually find their way into California, was sufficient to support personal jurisdiction. The Supreme Court of the United States disagreed, concluding that consideration of the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the various interests of the "interstate judicial system" led to the conclusion that due process would be offended by permitting the California courts to maintain jurisdiction over Asahi in this case.

### III

### A.

■ Where personal jurisdiction is challenged in a Rule 12(b) motion, the plaintiff has the burden of establishing that jurisdiction exists. This burden varies with the manner in which the district court approaches the motion. We explained this variation in *Welsh v. Gibbs*, 631 F.2d 436, 438–39 (6th Cir.1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981):

The burden of establishing jurisdiction is on the plaintiff. *Weller v. Cromwell Oil Co.*, 504 F.2d 927 (6th Cir.1974). However, if the district court determines to decide the issue solely on the basis of written materials, the plaintiff should be required only to make a prima facie case of jurisdiction, that is, he need only

"demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss." *Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280, 1285 (9th Cir.1977) (citation omitted). *Accord: Jetco Electronic Industries, Inc. v. Gardiner,* 473 F.2d 1228 (5th Cir.1973). However, if the district court concludes that the written submissions have raised issues of credibility or disputed issues of fact which require resolution, it may conduct a preliminary evidentiary hearing. Where this occurs the plaintiff must show by a preponderance of the evidence that jurisdiction exists. *Data Disc, Inc. v. Systems Technology Associates, Inc., supra,* 557 F.2d at 1285.

When the district court finds no need for an evidentiary hearing, as in the present case, "the burden of the plaintiff is relatively slight and the district court 'must consider the pleadings and affidavits in the light most favorable to the plaintiff.'" *Id.* at 439 (quoting *Poston v. American President Lines, Ltd.,* 452 F.Supp. 568, 571 (S.D. Fla.1978)). The only matters considered by the district court in this case were the amended complaint and an affidavit of Cohn which contradicted nothing in the complaint but merely confirmed that the defendant is a California resident who has never practiced law in Ohio.

### B.

Each case involving the issue of personal jurisdiction over a nonresident defendant must be decided on its own facts. Most of the cases we have examined have involved tort claims against nonresident manufacturers or suppliers, or breach of contract claims. Such claims require an inquiry into whether the defendant has transacted business within the forum state in the usual, commercial sense of "doing business." Many cases involve disputes over patent rights. The present case does not fit neatly into any of these categories, and we must look for features in this case that are analogous to those in the more common cases.

■ The Supreme Court stated in *Burger King* that "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum state." 471 U.S. at 474, 105 S.Ct. at 2183. The two related functions of the minimum contacts requirement are that it protects a defendant from the burden of litigating in an inconvenient forum and prevents the states from reaching out, through their courts, "beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). Thus, a plaintiff cannot satisfy the minimum contacts requirement by its unilateral activity aimed at a nonresident defendant. It is the defendant who must purposefully avail himself of the privilege of conducting activities within the forum state. *Hanson v. Denckla,* 357 U.S. at 253, 78 S.Ct. at 1239. In *Burger King,* which like the present one was a specific jurisdiction case, the Court emphasized that a substantial connection with the forum exists when the contacts upon which jurisdiction is asserted "proximately result from actions by the defendant *himself.*" 471 U.S. at 475, 105 S.Ct. at 2184. Satisfaction of the "purposeful availment" requirement ensures that a defendant will not be "haled into a jurisdiction" with which he has no substantial connection or where his activities would not lead one reasonably to believe that he was subjecting himself to the processes of the jurisdiction. *Id.*

■ Once it has been determined that minimum contacts have been established through the purposeful activities of the defendant himself, jurisdiction over the nonresident defendant is proper unless the concept of "fair play and substantial justice" would be violated. *Id.* at 477–78, 105 S.Ct. at 2185 (quoting *World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 564). In reaching the decision on fair play and substantial justice, the court must consider other factors identified by the Supreme Court. These include the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief,

and the interest of other states in securing the most efficient resolutions of controversies. *Asahi Metal Industry*, 107 S.Ct. at 1034.

## IV.

### A.

██ It is clear to us that Cohn himself originated and maintained the required contacts with Ohio by his letters and telephone calls to American Greetings and by designating his brother, an Ohio resident, and an Ohio attorney to pursue his claims with American Greetings in Ohio. In these contacts Cohn did much more than argue that the amendment to the plaintiff's articles was illegal. He threatened to sue American Greetings and sought a substantial sum of money to forego his claim. In view of these undisputed facts, we find the district court's description of Cohn's position in the litigation as "mere ownership of stock in an Ohio company and the expression of strong reservations concerning the legality of a matter of legitimate shareholder interest" to be inaccurate. We find that both the requirement of minimum contact and that of "purposeful availment" were satisfied because these contacts did "proximately result from actions by the defendant *himself.*" *Burger King*, 471 U.S. at 475, 105 S.Ct. at 2184.

The three criteria required for personal jurisdiction over a nonresident defendant in a diversity case as enunciated by this court in *Southern Machine Co.* are derived from *International Shoe* and *Hanson v. Denckla.* As we have just pointed out, the plaintiff satisfied the first criterion in this case. It satisfied the second as well; it is clear that the cause of action arose from the defendant's activities in Ohio. Before discussing the third criterion, we note that this court has stated that "[w]hen the first two elements are met, an inference arises that the third, fairness, is also present; only the unusual case will not meet this third criterion." *First National Bank of Louisville v. J.W. Brewer Tire Co.*, 680 F.2d 1123, 1126 (6th Cir.1982).

Turning to the factors that determine reasonableness in the particular case, we find first that the burden on Cohn is not unduly heavy. Long before the plaintiff filed suit Cohn was represented by an Ohio attorney. For a period of nine months he was able to press his claim on the plaintiff and to cause meetings to be held between attorneys and officers of American Greetings and his chosen representatives without traveling to Ohio. Second, there can be no doubt that plaintiff has a strong interest in the availability of a convenient forum for resolution of a dispute that had the possibility of affecting its relations with all its shareholders. Third, defendant's position was that the amendment was illegal under Ohio law and his threats of legal action implicated Ohio law. We believe it is evident that Ohio has a strong interest in providing a forum for the adjudication of issues pertaining to the legality under Ohio law of the acts of an Ohio corporation. See *Poyner v. Erma Werke GMBH*, 618 F.2d 1186, 1191 (6th Cir.), *cert. denied sub nom. Insurance Co. of North America v. Poyner*, 449 U.S. 841, 101 S.Ct. 121, 66 L.Ed.2d 49 (1980) ("We hold the interest of the Commonwealth in adjudicating this dispute to be an important factor in the resolution of the issue at bar."). Finally, the interests of the interstate judicial system, *Asahi Metal Industry*, 107 S.Ct. at 1034, do not appear to be implicated in any way by permitting *in personam* jurisdiction in the present case. Thus the defendant certainly has not presented "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2185.

### B.

We have examined the lower court decisions cited by both parties. However, because of important factual distinctions, we find none of them as persuasive as our analysis based on Supreme Court and Sixth Circuit decisions. In the cases cited by the plaintiff there were contacts with the forum state that went far beyond the minimum requirements of *International Shoe* and *Hanson v. Denckla.* Similarly, in the cases relied upon by the defendant, at least

one of the requirements for upholding personal jurisdiction was missing.

The defendant does make one argument that must be answered. Throughout his brief and in oral argument, Cohn contended that he was only engaged in "settlement activities," and that it would be against public policy to encourage litigation by giving jurisdictional significance to such activities. We need not determine the reach of the public policy which favors settlement over litigation because the contacts detailed in the amended complaint cannot be characterized as settlement discussions. American Greetings never made an offer of settlement; it merely attempted to resolve the controversy created by Cohn's assertion that an act of the corporation was illegal. By responding to Cohn's requests for documentary information and meeting with his attorney and brother in an effort to avoid being sued, American Greetings did not engage in settlement activities so as to preclude it from seeking a declaratory judgment in a forum having an interest in the outcome of the controversy.

The judgment of the district court is reversed, and the case is remanded for reinstatement of the amended complaint, and for further proceedings. Cohn will bear the costs of this appeal.