**ALTA ANALYTICS INC., Plaintiff,**

v.

**Paul W. MUUSS IV, Defendant.**

**No. C2–99–1164.**

United States District Court,
S.D. Ohio,
Eastern Division.

Dec. 8, 1999.

William A. Nolan and Jill S. Kinla, Squire, Sanders & Dempsey, Columbus, OH, for plaintiff.

Christopher Coe Russell, Porter, Wright, Morris & Arthur, Columbus, OH, for defendant.

## ORDER

MARBLEY, District Judge.

This matter comes before the Court on Plaintiff's Motion for Preliminary Injunction and Defendant's Motion to Dismiss Complaint and to Dissolve the Temporary Restraining Order Due to Lack of Personal Jurisdiction and Improper Venue. Plaintiff alleges that Defendant, Paul W. Muuss IV, breached the parties' Employee Invention and Confidentiality Agreement ("Agreement"), and that Defendant violated the covenant not to compete provision of the Agreement.

The Court held a hearing on the above Motions on November 12, 1999. For the reasons set forth below, the Court **GRANTS** Plaintiff's Motion for Preliminary Injunction and **DENIES** Defendant's Motion. Defendant is **ENJOINED** for one year from the date of the Court's Temporary Restraining Order dated October 29, 1999, from breaching the Agreement, including but not limited to, maintaining any employment with Policy Management Systems Corporation and selling InfoGlide Inc.'s products, and from disclosing or using Plaintiff's confidential or trade secret information.

## I. Introduction

Plaintiff is an Ohio corporation doing business in the insurance and financial fraud detection software industry. Plaintiff's principal place of business is Westerville, Ohio. Defendant is a former employee of ALTA Analytics, Inc. ("ALTA") who was employed by Plaintiff as an Account Representative from December 1997 until October 1999. Defendant has lived in Illinois since 1991. Since leaving ALTA, Defendant has been employed by Policy Management Systems Corporation ("PMSC"). PMSC markets and sells InfoGlide products, which are insurance and financial fraud detection software. The InfoGlide product line is the only direct competitor with ALTA in the insurance and financial fraud detection software industry.

According to the Agreement, Defendant is prohibited from competing with Plaintiff during his employment and for twelve months following termination of his employment with Plaintiff. Section 3.7 of the Agreement provides, in part, that:

> During Employee's employment, and for a period of twelve months thereafter, Employee will not, without ALTA's prior written consent, directly or indirectly, alone or as a partner, joint venturer, officer, director, employee, consultant, agent, independent contractor, or stockholder of any company or business, engage in any business activity which is directly or indirectly in competition with any of the products or services being developed, sold or otherwise provided by ALTA. . . .

There are also provisions of the Agreement regarding the non-disclosure of Plaintiff's trade secrets and non-disclosure of the Plaintiff and third parties' confidential information and that entitle Plaintiff to injunctive relief in the event Defendant's breach. The Agreement also states that the laws of the State of Ohio govern.

As an Account Representative, Defendant gained extensive technical knowledge of Plaintiff's software. Plaintiff provided Defendant with detailed confidential information about its technology, strategies, costs, pricing, design, customers, and marketing plans and about third parties with whom Plaintiff had entered non-disclosure agreements. He sold and marketed ALTA products to customers, trade associations, and government agencies.

In October 1999, Defendant informed Plaintiff that he was resigning from his position, effective October 15, 1999, and pursuing one of two options: (1) retirement from the insurance fraud detection software industry or (2) employment with PMSC. Ultimately, Defendant chose the second option.

Plaintiff argues that Defendant's employment with PMSC violates the Agreement because PMSC sells and markets InfoGlide's fraud detection software, which is ALTA's only known competitor in the insurance and fraud detection software market. Plaintiff also alleges that, during the last six months of his employment with ALTA, Defendant engaged in on-going telephonic discussions with and unexplained travel to the headquarters of InfoGlide and PMSC. Phone records indicate that Defendant made over 140 phone and conference calls to PMSC, InfoGlide, or both over the same six-month period. Plaintiff claims that these calls could not have had any legitimate business purpose. Also, a forensic analysis of Defendant's ALTA laptop allegedly reveals that Defendant transferred an entire directory containing confidential ALTA business in-

formation from the laptop to another computer. These events lead Plaintiff to conclude that Defendant no longer considers himself constrained by any duty to maintain confidentiality under the Agreement, and that injunctive relief is necessary to prevent immediate irreparable damage to its business and customer relationships.

Finally, Plaintiff claims that Defendant has knowledge of ALTA's development of other software products that would compete with PMSC's other product lines, in addition to ALTA's present competition with InfoGlide. Thus, Plaintiff argues that there is potential for even greater competition in the future between ALTA and PMSC. Defendant's knowledge of ALTA's products in development could irreparably harm Plaintiff's viability as a corporation.

Defendant does not dispute that he spoke with PMSC while he was still employed by ALTA. He denies, however, violating the Agreement or divulging any confidential ALTA information. PMSC sells multiple products, other than InfoGlide, that Defendant contends are not in competition with anything sold or marketed by Plaintiff. Defendant argues that his action simply manifests a decision to change employers and to sell new and different products that are *not* in competition with ALTA.

## II. Analysis

### A. Jurisdiction and Venue

As a threshold matter, Defendant contends that jurisdiction and venue are not proper in this Court because he has had no significant presence in Ohio during the period relevant to this litigation. The employment contract was executed by Defendant in Illinois. Defendant's position of Account Representative required him to visit Ohio only on a handful of occasions for sales and training meetings. He maintained his residence in Illinois. Defendant's primary supervisor was in Dallas, Texas, and Defendant maintained approximately 25 accounts in at least 11 different states. Defendant has not had any sales credited in Ohio, although he has made sales contacts here. Moreover, Defendant argues that the Agreement only refers to being governed by Ohio law, not to having the case litigated in an Ohio forum in the event of breach.

Plaintiff claims that jurisdiction and venue are proper in this Court because of Defendant's conduct and clear relationship to Ohio. Defendant was in charge of soliciting an account in Ohio from American Financial Group. As an Account Representative, Defendant was required to remain in constant telephonic and electronic mail contact with not only his supervisor in Texas, but also with ALTA's customer support, payroll, accounting, travel, development, and human resources departments in Ohio. Performance of Defendant's duties also required the use of written material and computer data that Plaintiff shipped from Ohio. Furthermore, Plaintiff argues that this suit arises from Defendant's breach of a contract that is governed by Ohio law and from tortious conduct outside the state of Ohio that resulted in injury to an Ohio corporation.

### 1. Personal Jurisdiction

It is axiomatic that this Court "must apply the law of the forum state to determine whether it may exercise jurisdiction over a non-resident defendant." *Vorhis v. American Med. Sys., Inc.*, No. 96–3525, 1997 WL 476527, 1997 U.S.App. LEXIS 22442, at * 3 (6th Cir. Aug. 19, 1997) (citing *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1167 (6th Cir.1988)). There is a two-step analysis to determine personal jurisdiction under the laws of Ohio, the purported forum state: "(1) ... whether the state's 'long-arm' statute and the applicable Civil Rule confer personal jurisdiction, and if so, (2) whether granting jurisdiction under the statute and rule would deprive the defendant of the right to due process of law pursuant to the Fourteenth Amendment to the United States Constitution." *Goldstein*, 70 Ohio St.3d 232, 638 N.E.2d 541, 543 (1994) (quoting *U.S. Sprint Communications Co., Ltd. Partnership v. Mr. K's Foods, Inc.*, 68 Ohio St.3d 181, 624 N.E.2d 1048, 1051

(1994)). Jurisdiction of Ohio courts does not extend fully to the limits of the Due Process Clause. *See Goldstein v. Christiansen,* 638 N.E.2d at 545 n. 1. Thus, merely finding that jurisdiction comports with federal due process standards is not sufficient in Ohio; rather, both prongs of analysis must be satisfied. *See id.*

■■■ The burden of establishing jurisdiction lies generally with the Plaintiff. *See American Greetings Corp.,* 839 F.2d at 1168 (holding that the burden lies with the plaintiff in a Rule 12(b) motion). The extent of the burden depends upon whether the district court holds a hearing. *See id.* This Court held a hearing on the issue of jurisdiction, thereby establishing a burden of proof by a preponderance of the evidence. *See id.* at 1168–69. As the Sixth Circuit explained in *American Greetings:*

> The burden of establishing jurisdiction is on the plaintiff.... However, if the district court concludes that the written submissions have raised issues of credibility or disputed issues of fact which require resolution, it may conduct a preliminary evidentiary hearing. Where this occurs the plaintiff must show by a preponderance of the evidence that jurisdiction exists.

*See id.* (citation omitted) (quoting *Welsh v. Gibbs,* 631 F.2d 436, 438–39 (6th Cir.1980)).

### a. Personal Jurisdiction under Ohio Law

The Ohio long arm statute, Section 2307.382(A) of the Ohio Revised Code provides, in part:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> (1) Transacting any business in this state;
>
> (2) Contracting to supply services or goods in this state; ...
>
> (4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or de-

rives substantial revenue from goods used or consumed or services rendered in this state; ...

> (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state; ....

OHIO REV.CODE § 2307.382(A). Rule 4.3(A)(1) of the Ohio Rules of Civil Procedure allows service of process to parties outside the state when the cause of action stems from a party's "[t]ransacting any business in this state." OHIO R.CIV.P. 4.3(A). A finding by the Court that Defendant has transacted business in Ohio, or has acted consistently with any one of the above factors, would be sufficient to assert personal jurisdiction over him. *See Goldstein,* 638 N.E.2d at 543–45.

Plaintiff contends that the employment relationship was consummated in Ohio and contemplated on-going responsibilities and future expectations between ALTA and Defendant. According to Plaintiff, Defendant's position as an Account Representative required him to be in constant contact with Plaintiff's home office in Ohio. Defendant's duties included performing services that required him to travel to Ohio on a number of occasions. When Defendant committed actions that breached the Agreement, Plaintiff argues that Defendant might reasonably have expected to injure ALTA in Ohio. Thus, Plaintiff avers that at least three provisions of Ohio's long arm statute grant jurisdiction over Defendant: (1) he has transacted business in Ohio, OHIO REV.Code 2307.382(A)(1); (2) he has contracted to supply services in Ohio, OHIO REV.CODE 2307.382(A)(2); and (3) he has caused tortious injury in Ohio to a person by an act outside the state that he might reasonably expect would injure such person, OHIO REV.CODE 2307.382(A)(6).

Defendant asserts that the long-arm statute does not apply in his case because he neither lived in nor conducted business

in Ohio at any time during his employment with Plaintiff. He executed the sales contract in Illinois, and then faxed the document to Plaintiff in Ohio. Defendant contends that the day-to-day dealings that he had with Plaintiff were through his supervisor in Dallas, Texas. Defendant was present in Ohio only when Plaintiff required him to be, such as for training and sales meetings. The location of most of Plaintiff's sales meetings were not in Ohio. Taking all these factors into account, Defendant argues that he had no significant contacts with Ohio personally or professionally during any time relevant to this case.

■ To determine whether personal jurisdiction exists, the Court turns first to the question of whether Defendant transacted business in Ohio. In this case, Defendant executed an employment contract with an Ohio corporation. Courts within the Sixth Circuit have held that " '[t]ransacting business' subsumes the narrower act of contracting." *Stern's Dept's Stores, Inc. v. Herbert Mines Assoc.*, No. C–1–98–844, 1999 U.S.Dist. LEXIS 10805, at *15 (S.D.Ohio July 8, 1999) (citations omitted) (quoting *Douglas v. Modern Aero, Inc.*, 954 F.Supp. 1206, 1210 (N.D.Ohio 1997)). The Supreme Court of Ohio has held that transacting business "encompasses 'to carry on business,' and 'to have dealings,' and is broader ... than the word 'contract.'" *Goldstein*, 638 N.E.2d at 544 (alteration in original) (emphasis deleted from original) (quoting *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear Inc.*, 53 Ohio St.3d 73, 559 N.E.2d 477, 480 (1990)). Thus, the act of contracting can qualify as transacting business under Ohio's long-arm statute.

■ The Court must consider not only the act of contracting itself, but also: (1) whether the contract represents "transacting business" under the Ohio Revised Code, meaning that the " 'necessary nexus' " exists between Defendants' business dealings in Ohio and the matters at issue in this case; and (2) whether the cause of action arises from the contract. *Stern's*

*Dep't Stores, Inc.*, 1999 U.S.Dist. LEXIS 10805, at *23 (citing *Berning v. BBC, Inc.*, 575 F.Supp. 1354, 1357 (S.D.Ohio 1983)). Here, Defendant contracted for employment with an Ohio corporation and performed duties on the corporation's behalf inside and outside of the state. The status of Defendant as an employee relates directly to the matters at issue in this case. A nexus exists between the business dealings of Defendant and Plaintiff that produced the Agreement and the continuing contractual obligations created by the Agreement. Moreover, Defendant's breach of the Agreement gives rise to the cause of action. The Sixth Circuit has held that "if the cause of action is for breach of that contract [with an Ohio resident] ... then the cause of action naturally arises from the defendant's activities in Ohio." *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir.1998) (recognizing that the Ohio long-arm statute does not extend to the limits of Due Process and focusing the inquiry on whether Defendant established sufficient business contacts with Ohio).

Defendant established a significant ongoing contractual relationship with Plaintiff in Ohio and the cause of action in this case arose from his breach of that relationship. Thus, the Court finds that Defendant's activities in Ohio rise to the level of "transacting business" under the Ohio Revised Code. *See* OHIO REV.CODE § 2307.382(A)(1). Defendant is properly subject to the personal jurisdiction of this Court under Ohio's long-arm statute.

**b. Personal Jurisdiction Consistent with Due Process**

The Court next must consider whether the jurisdiction granted under the long-arm statute is consistent with " 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (*quoting Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). When personal jurisdiction stems from one act, which in this case is Defendant's breach of contract, the

Sixth Circuit has recognized three criteria by which to evaluate the facts:

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Mach. Co., Inc. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir.1968). Each criterion must be satisfied for a court to find its jurisdiction consistent with due process. *See id.*

■ Under the *Southern Machine* test, the Court first must determine whether Defendant purposefully availed himself of "the privilege of transacting business" in Ohio. *Id.* at 382. Jurisdiction cannot be established through a Plaintiff's " 'unilateral activit[ies]' " aimed at a non-resident Defendant. *See Burger King v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 417, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). Furthermore, the Supreme Court has stated that the act of contracting alone is not adequate to "automatically establish sufficient minimum contacts in the other party's home forum," *Burger King,* 471 U.S. at 478, 105 S.Ct. 2174, but that a court should look to other factors such as "prior negotiations," "contemplated future consequences," "the terms of the contract," and "the parties' actual course of dealing" to determine whether the contract constitutes sufficient minimum contact with the forum. *Id.* 478–79, 105 S.Ct. 2174. Where a party enters into a contract governed by Ohio law and purposefully perpetuates the contractual relationship via electronic and other communications, that party "should have reasonably foreseen that doing so would have consequences in Ohio." *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1265 (6th Cir. 1996). Such contracting parties are on notice that they should reasonably be expected to be haled into court in the forum. *See Burger King,* 471 U.S. at 475, 105 S.Ct. 2174 (stating that with the benefits of protection under a forum's laws come the burdens of possible litigation).

■ When a party seeks to contract or to engage in legal obligations with a party in another state, that party may subject itself to the jurisdiction of that other state. *Equifax Serv. Inc. v. Hitz,* 905 F.2d 1355, 1358 (10th Cir.1990) (" 'Parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State [sic] for the consequences of their activities.' ") (quoting *Burger King,* 471 U.S. at 473, 105 S.Ct. 2174 (citation omitted)). The Sixth Circuit has held that "[i]f ... a nonresident defendant transacts business by negotiating and executing a contract via telephone calls and letters to an Ohio resident, then the defendant has purposefully availed himself of the forum by creating a continuing obligation in Ohio." *Cole v. Mileti,* 133 F.3d 433, 436 (6th Cir.1998) (citations omitted). "Moreover, where individuals 'purposefully derive benefit' from their interstate activities, it may well be unfair to allow them to escape having to account in other States [sic] for consequences that arise proximately from such activities...." *Burger King,* 471 U.S. at 474, 105 S.Ct. 2174 (involving breach of franchise agreement engaged in by Michigan franchisees with a Florida corporation) (citations omitted). Thus, where a defendant both contractually reaches out to another state and purposefully derives benefit from that contact, the defendant has purposefully availed himself of the privileges of the forum's laws.

■ In this case, Defendant has met the purposeful availment requirement in this Court's jurisdiction. He willingly entered into an employment contract with this Ohio company, with a full understanding that the ultimate decisions regarding his work assignments, corporate decisions,

training, and employment would be made in Ohio. The fact of infrequency of Defendant's physical presence in Ohio is inconsequential. *See Burger King*, 471 U.S. at 476, 105 S.Ct. 2174. "The focus is on the quality of the contacts and not their number." *Stern's Dep't Stores, Inc. v. Herbert Mines Assoc.*, No. C–1–98–844, 1999 U.S.Dist. LEXIS 10805, at *19 (S.D.Ohio July 8, 1999) (citation omitted). Where an employee receives payment, supplies, and reimbursement for expenses, as this Defendant did, from the principal offices of an employer, a court may conclude that even a small number of physical contacts with the forum state may subject the defendant to the jurisdiction. *Equifax v. Hitz*, 905 F.2d 1355, 1358 (10th Cir.1990). The quality of Defendant's contacts with Ohio is consistent with Defendant's purposefully availing himself of the privilege of transacting business in this forum.

The Tenth Circuit has held, under similar facts, that a defendant purposefully availed himself of privileges in the jurisdiction when he engaged in an employment contract that created a significant relationship between him and the forum state. *See id.* In *Equifax*, the Court affirmed the district court's issuance of a preliminary injunction in favor of the plaintiff that prohibited the defendant from violating a covenant not to compete. *See id.* at 1356–57. The defendant was employed by a company that merged with the plaintiff, Equifax, a Georgia corporation. *See id.* at 1357. Equifax maintained the former company's principal place of business in Kansas. *See id.* The defendant worked solely in southern California while he was employed by the plaintiff's predecessor in Kansas. *See id.* at 1358.

The plaintiff brought suit when the defendant resigned his position and became an executive of a "competing enterprise," in violation of a covenant not to compete for two years after his departure from the company. *Id.* at 1357. The defendant had regular contact with the plaintiff's Kansas employees by telephone, mail, and electronic mail, even though he worked solely at the branch office in southern California.

*See id.* at 1358. The defendant's customers received invoices from and made payment to the Kansas offices. *See id.* The employment contract was negotiated by the defendant with the Kansas-based president. *See id.*

The Tenth Circuit affirmed the district court's denial of the defendant's motion to transfer venue from Kansas, as well as the district court's finding in favor of asserting personal jurisdiction in Kansas over the defendant. *See id.* at 1362. The Court concluded that defendant's lack of significant physical presence did not diminish the " 'relationship among the defendant, the forum, and the litigation,' " all of which related back to Kansas. *See id.* at 1359 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)). The Court further held that the contract's choice of law provision created an " 'deliberate affiliation' " with the forum state in which the defendant had reasonable notice of possible future litigation. *See id.* (quoting *Burger King*, 471 U.S. at 482, 105 S.Ct. 2174).

Further, the choice of law provision in the Agreement refers to the laws of the state of Ohio. Defendant's contact with Plaintiff's offices in Ohio establishes a pattern similar to that of the defendant in *Equifax* —the employment contract was negotiated with an executive from the corporation's home office, he had significant contact with the company's home office, *i.e.*, he received his paychecks, sales materials, and travel expenses from the Ohio office and was in constant contact with Plaintiff's customer support, payroll, accounting, travel, development, and human resources departments in Ohio. In *Equifax*, the Tenth Circuit held that this pattern created a relationship between the defendant, the forum, and the litigation that indicated the defendant's purposeful availment of court's jurisdiction. *See id.* at 1359.

The next step in the due process analysis is for the Court to consider whether Defendant's activities in the forum state

gave rise to the cause of action. The Sixth Circuit has determined that "[a]n action will be deemed not to have arisen from the defendant's contacts with the forum state only when they are unrelated to the operative facts of the controversy." *Creech v. Roberts*, 908 F.2d 75, 80 (6th Cir.1990) (citations omitted). In *Creech*, the Sixth Circuit determined that a defendant's activities in Ohio gave rise to the cause of action, even though the actual location of the tortious injury was Oklahoma. *See id.* Creech, the plaintiff, filed an action for medical malpractice and lack of informed consent in the Ohio state courts, when she was treated in the defendants' medical center in Oklahoma. *See id.* at 78. The Court determined that the action arose from the defendants' actions in Ohio because the defendants advertised their medical center in Ohio and, but for their advertisement, plaintiff would not have otherwise sought treatment there. *See id.* at 80.

█ In this case, Defendant's engaging in employment with Plaintiff and entering into the ongoing contractual relationship gave rise to Plaintiff's cause of action. The Court finds, therefore, that Defendant's activities in this forum produced the Agreement and thereby gave rise to this cause of action.

█ The final element of *Southern Machine*, the reasonableness of exercising jurisdiction over the defendant, is usually satisfied when, as in this case, the other two criteria are met.[1] The Court may consider other elements in determining the reasonableness of its exercise of jurisdiction over a defendant, including: "'the burden on the defendant,' 'the forum State's [sic] interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the

interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and 'the shared interest of the several States [sic] in furthering fundamental social policies.'" *Burger King*, 471 U.S. at 477, 105 S.Ct. 2174 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). A defendant "must present a compelling case that ... would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477, 105 S.Ct. 2174. The Supreme Court has long recognized that "modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

█ Defendant has not presented the Court with any argument that this jurisdiction is unduly burdensome upon him, except the inconvenience of travel expense from Chicago to Columbus.[2] Defendant's due process rights do not necessarily suffer simply because ALTA brought this case in Ohio rather than Illinois. *See id.* at 224, 78 S.Ct. 199. Clearly, the forum of the State of Ohio has a keen interest in adjudicating disputes that affect its corporate citizens' viability and trade secrets. As to the other *Burger King* elements, it is beyond responsible debate that Plaintiff has an interest in obtaining convenient and effective relief. Moreover, the interstate judicial system has an interest in efficient resolution of this controversy, and has an interest in furthering fundamental social policies by efficiently and fairly resolving disputes between citizens of different states. Thus, this Court finds nothing to

---

1. The Sixth Circuit Court has stated that "'when the first two elements are met, an inference arises that the third, fairness [or reasonableness], is also present; only the unusual case will not meet this third criterion.'" *American Greetings*, 839 F.2d at 1170 (quoting *First Nat'l Bank of Louisville v. J.W. Brewer Tire Co.*, 680 F.2d 1123, 1126 (6th Cir.1982)).

2. Given Defendant's demonstrated means and lifestyle, the Court does not find travel costs to be a significant difficulty, and certainly not one that interferes with Defendant's ability to obtain justice. *See, e.g., Burger King*, 471 U.S at 477–78, 105 S.Ct. 2174 (discussing the level of "gravely difficult" inconvenience necessary for a finding of unreasonableness).

suggest that exercise of its personal jurisdiction would be unreasonable in this case.

## 2. Venue

■ Since the Court has established that jurisdiction is proper, it must address the question of venue. In this Circuit "[t]he decision of whether to dismiss or transfer is within the district court's sound discretion...." *First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 262 (6th Cir.1998). A finding of personal jurisdiction is consistent with a court's maintaining venue:

A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391. Thus, the Court's valid exercise of personal jurisdiction over Defendant defeats any claims of improper venue.

■ Under § 1391(a)(2), *any* forum with a substantial connection to the events giving rise to a claim is a proper venue.[3] *First of Michigan Corp.*, 141 F.3d at 263. The evidence has established that Ohio has a substantial connection given the contractual relationship that gave rise to the cause of action. Thus, venue is proper in this Court pursuant to § 1391(a)(2).

## B. Preliminary Injunction

■ The remedy of preliminary injunction is an extraordinary one in which the movant carries the burden of persua-

sion. *See Penetone Corp. v. Palchem Inc.*, 627 F.Supp. 997, 1004 (N.D.Ohio 1985) (citations omitted). The Court must address four factors in deciding whether to issue a preliminary injunction: "(1) the likelihood of success on the merits; (2) the irreparable harm that could result if the injunction is not issued; (3) the impact on the public interest, and (4) the possibility of substantial harm to others." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir.1992) (citation omitted). These four factors are to be balanced against each other. *See Honeywell, Inc. v. Brewer–Garrett Co.*, No. 97–3673, 1998 WL 152951, 1998 U.S.App. LEXIS 6017, at *7–*8 (6th Cir. Mar. 23, 1998) (quoting *Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474, 1480 (6th Cir.1995) (quoting *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir.1985))).

In this case, Plaintiff requests a preliminary injunction to enjoin Defendant from breaching his non-competition agreement for one year commencing on the date of the order and to enjoin Defendant from disclosing or using Plaintiff's confidential or trade secret information. Defendant responds that such an injunction would be an unreasonable restraint on his ability to maintain his livelihood.

### 1. Likelihood of Success on the Merits

Plaintiffs seek injunctive relief effectively to enforce the covenant not to compete and to protect their trade secrets. The Court will assess, therefore, Plaintiff's likelihood of success on their covenant not to compete and trade secret claims.

#### a. Covenant Not to Compete

■ For a plaintiff to prevail in an action to enforce a covenant not to compete, the covenant must be reasonable. *See, e.g., Basicomputer*, 973 F.2d at 512 (discussing court's responsibility to examine reasonableness of covenants not to

---

**3.** The Court need not engage in a weighing of which venue has the most substantial connection. *First of Michigan Corp.*, 141 F.3d at 262. The Court need only consider whether the venue has a substantial connection, not whether there are forums that have even more substantial connections. *See id.*

compete) (citation omitted). In evaluating employee covenants not to compete with a former employer, the Ohio Supreme Court has eschewed a bright line rule in favor of an overall standard of "reasonableness," that enables courts to consider all factors relevant to the contract and to "fashion a contract" that is reasonable based on the facts of the case. *Raimonde v. Vlerah*, 42 Ohio St.2d 21, 325 N.E.2d 544, 547 (1975). Courts can weigh several factors in determining the reasonableness of a covenant's restrictions:

> [w]hether the covenant imposes temporal and spatial limitations, whether the employee had contact with customers, whether the employee possesses confidential information or trade secrets, whether the covenant bars only unfair competition, whether the covenant stifles the employee's inherent skill and experience, whether the benefit to the employer is disproportionate to the employee's detriment, whether the covenant destroys the employee's sole means of support, whether the employee's talent was developed during the employment, and whether the forbidden employment is merely incidental to the main employment.

*Basicomputer*, 973 F.2d at 512 (*citing Raimonde*, 325 N.E.2d at 547). The Ohio Supreme Court has held that " '[a] covenant restraining an employee from competing with his former employer upon termination of employment *is reasonable if the restraint is no greater than is required for the protection of the employer, does not impose undue hardship on the employee, and is not injurious to the public.*' " *Rogers v. Runfola*, 57 Ohio St.3d 5, 565 N.E.2d 540, 543 (1991) (quoting *Raimonde*, 325 N.E.2d ¶ 2 syllabus); *see, e.g.*, *Valco Cincinnati, Inc. v. N & D Machining Serv., Inc.*, 24 Ohio St.3d 41, 492 N.E.2d 814, 820 (1986) (finding that the issuance of an injunction against unlawful use of confidential business information does not violate a party's constitutional rights, where that party can still carry on business "generally within [the] commercial field").

The nature of Plaintiff's industry tempers the Court's consideration of the Agreement's lack of geographic restriction. Despite the omission, Defendant is essentially prevented from working for one company and that company's distributor for twelve months. The insurance and financial fraud detection software industry is very small with essentially two competitors—Plaintiff and InfoGlide. Both companies have a fairly small customer base in a niche market. There is no other market competitor. Defendant's work history demonstrates a wide range of experience in computing and software sales; so he is not foreclosed from working for other companies in other areas. Thus, the Court finds that, the covenant not to compete prevents Defendant from working for one company and its distributor. The Court does not find such restriction unreasonable, in light of Plaintiff's very small industry.

Based on the above factors, the Agreement's restrictions do not appear to protect Plaintiff at the unfair expense of Defendant. Defendant gained significant expertise and training with Plaintiff in the area of insurance and financial fraud detection software. Defendant has significant technical knowledge of Plaintiff's current products and was involved with development of future products. The Agreement is of a limited duration—twelve months. As one of four ALTA Account Representatives, Defendant has had significant contact with customers and access to Plaintiff's confidential and trade secret information. The Agreement bars competition only to the extent that Plaintiff's competitors could benefit from its proprietary confidential information. Defendant's skills in software sales are not stifled as a whole. The Agreement does not leave Defendant totally without a means of support, as he is an highly experienced software salesman. Moreover, the Agreement constrains mostly Defendant's ability to use talents that he developed during employment with Plaintiff. Thus, the Agreement does

not create an unreasonably restrictive covenant.

### b. Trade Secrets and Employee Confidentiality Obligations

Ohio law protects companies from unauthorized disclosure of their confidential information. Ohio law defines a "trade secret" as including:

[a]ny business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:

(1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

(2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

OHIO REV.CODE § 1333.61. An injunction may be issued when "[a]ctual or threatened misappropriation" of a trade secret occurs. OHIO REV.CODE § 1333.62. Ohio law also provides that "[n]o employee of another, who in the course and within the scope of his employment receives any confidential matter or information, shall knowingly, without the consent of his employer, furnish or disclose such matter or information to any person not privileged to acquire it." OHIO REV.CODE § 1333.81.

■ For a plaintiff to prevail in action for misappropriation of a trade secret, that the plaintiff must establish three facts by a preponderance of the evidence: (1) "that a trade secret exists," (2) "that the trade secret was acquired as a result of a confidential relationship," and (3) that it was acquired "as a result of the unauthorized use of a trade secret." *Penetone Corp. v. Palchem Inc.*, 627 F.Supp. 997, 1005 (N.D.Ohio 1985) (citation omitted).

■ In this case, Plaintiff's confidential proprietary information includes its software's unique technology, design, and marketing features. Plaintiff demonstrated at the hearing that its information has independent value in its secrecy and that it has taken significant precautions to protect that information. Besides confidentiality agreements with its employees, Plaintiff regularly engages in such agreements with potential customers upon receipt of trial software. Plaintiff's executives testified that Plaintiff's main asset is its proprietary confidential information in current products and development. Moreover, its proprietary information is responsible for its competitive edge in the market. Thus, the Court finds that trade secrets exist.

■ The Agreement defined the confidential relationship in which Defendant gained knowledge of Plaintiff's trade secrets. Breach of the Agreement would constitute either unauthorized competition that implicates unauthorized use of Plaintiff's trade secrets or direct unauthorized use. The Court, therefore, concludes that Plaintiff is likely to succeed on the merits of its misappropriation of trade secret claims.

### 2. Irreparable Harm

■ The Sixth Circuit has held that an employer is likely to suffer irreparable harm when an employee breaches a non-competition covenant, resulting in a loss of fair competition. *See Basicomputer*, 973 F.2d at 512 (citation omitted). Plaintiff presented evidence that it will suffer irreparable harm in the absence of an injunction against Defendant. Its executives stated that Defendant possesses essential information about its pricing, strategy, technology, design, marketing, and customer information. With the information, Plaintiff's competitors could destroy its competitive edge in the market and, ultimately, Plaintiff itself. Plaintiff argues that a failure to restrain Defendant could affect the viability of the company as a whole. The Court is convinced that Plaintiff could suffer irreparable harm, given the nature of the fraud detection software market and Plaintiff's direct competition against Defendant's employers.

**786**

### 3. Whether the Public Interest Is Served by the Issuance of an Injunction

 The Court must decide whether the public interests is served by the issuance of an injunction in this case. The injunction would prevent Defendant's breach of the Agreement and his misappropriation of Plaintiff's trade secrets. Clearly, "the public interest is always served in the enforcement of valid restrictive covenants contained in lawful contracts." *National Interstate Ins. Co. v. Perro,* 934 F.Supp. 883, 891 (N.D.Ohio 1996). Moreover, in, "it is well-established that the trade secret policies in Ohio are to maintain the standards of commercial ethics and the encouragement of invention, as well as the protection of the substantial investment of employers in their proprietary information." *Valco Cincinnati, Inc.,* 492 N.E.2d at 820 (citation omitted). This injunction preserves the public's interest in fair competition in business, and serves the public interest.

### 4. Whether the Issuance of a Preliminary Injunction Would Cause Substantial Harm to Others

Evidence of any potential substantial harm to others has not been shown. The injunction would prohibit Defendant from engaging in any business activity that competes directly or indirectly with Plaintiff for twelve months. Defendant has not argued that the issuance of an injunction would cause substantial harm to others. Moreover, Defendant has not shown that either InfoGlide or PMSC would be substantially harmed if Defendant's services were withheld for twelve months. Thus, the Court concludes that the issuance of a preliminary injunction would not cause substantial harm to others.

### III. Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Preliminary Injunction and **DENIES** Defendant's Motion to Dismiss Complaint and to Dissolve the Temporary Restraining Order Due to Lack of Personal Jurisdiction and Improper Venue. Defendant is **ENJOINED** for one year from the date of the Court's Temporary Restraining Order dated October 29, 1999, from breaching the Agreement, including but not limited to, maintaining any employment with Policy Management Systems Corporation and selling InfoGlide Inc.'s products, and from disclosing or using Plaintiff's confidential or trade secret information.