11-0393-cr(L)
United States v. Ohle

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 20th day of October, two thousand eleven.

PRESENT:   ROBERT D. SACK,
                       REENA RAGGI,
                               *Circuit Judges*,
                       RICHARD K. EATON,
                               *Judge.*[*]

------------------------------------------------------------------------
UNITED STATES OF AMERICA,
                                       *Appellee*,

                   v.                                                      Nos.   11-0393-cr(L),
                                                                                          11-0395-cr(CON)

JOHN B. OHLE, III, WILLIAM E. BRADLEY,
                                       *Defendants-Appellants*.
------------------------------------------------------------------------

APPEARING FOR APPELLANTS:        STUART E. ABRAMS, Frankel & Abrams, New York, New York, *for Defendant-Appellant John B. Ohle, III*.

---

[*] Judge Richard K. Eaton of the United States Court of International Trade, sitting by designation.

1

EDWARD S. ZAS, Federal Defenders of New York, Inc., Appeals Bureau, New York, New York, *for Defendant-Appellant William E. Bradley*.

APPEARING FOR APPELLEE: STANLEY J. OKULA, JR., Assistant United States Attorney (Katherine Polk Failla, Assistant United States Attorney, Nanette L. Davis, Special Assistant United States Attorney, *on the brief*), *on behalf of* Preet Bharara, United States Attorney for the Southern District of New York, New York, New York.

Appeal from the United States District Court for the Southern District of New York (Jed S. Rakoff, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgments entered on January 28, 2011, are AFFIRMED.

John B. Ohle, III and William E. Bradley appeal from convictions entered after a jury trial at which both men were found guilty of conspiracy to defraud an agency of the United States, specifically, the Internal Revenue Service, see 18 U.S.C. §§ 371, 1341, 1343; 26 U.S.C. § 7201, and at which Ohle was also found guilty of two counts of attempted tax evasion, see 26 U.S.C. § 7201. Defendants challenge the sufficiency of the evidence supporting their convictions and related forfeiture orders, as well as the district court's denial of their new trial motion based on a purported denial of due process as recognized in Brady v. Maryland, 373 U.S. 83, 87 (1985). Bradley further challenges his 12-month prison sentence as procedurally unreasonable. We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

2

1. Sufficiency Challenges

Defendants bear a heavy burden in raising sufficiency challenges to their convictions because although our standard of review is de novo, we must view the trial evidence in the light most favorable to the verdict, assuming that the jury resolved all questions of witness credibility and competing inferences in favor of the prosecution. See United States v. Abu-Jihaad, 630 F.3d 102, 134-35 (2d Cir. 2010), cert. denied, 131 S. Ct. 3062 (2011). Under this "exceedingly deferential" standard of review, United States v. Hassan, 578 F.3d 108, 126 (2d Cir. 2008), defendants can secure relief only by showing that no rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt, see Jackson v. Virginia, 443 U.S. 307, 319 (1979); accord United States v. Abu-Jihaad, 630 F.3d at 135.

a. Conspiracy

Defendants contend that the evidence did not permit a reasonable jury to find that schemes to defraud one of Ohle's trust clients, Ecetra Ames, and his employer, Bank One, were part of the charged single overarching conspiracy to defraud the United States. We disagree. The question of whether evidence shows a single conspiracy or multiple independent conspiracies "is a question of fact for a properly instructed jury." United States v. Burger, 224 F.3d 107, 114 (2d Cir. 2000); accord United States v. Chavez, 549 F.3d 119, 125 (2d Cir. 2008). Defendants do not contend that the jury was improperly instructed on this point. Having reviewed the record, we conclude that a rational jury could have found that the complex, multi-phase process by which conspirators stole money from the Ames trust, then stole fees from Bank One that would not otherwise have gone to them, and finally

3

avoided paying federal taxes on the monies so obtained constituted a single interdependent scheme to defraud the United States. See United States v. McDermott, 245 F.3d 133, 136-37 (2d Cir. 2001); United States v. Sureff, 15 F.3d 225, 230-31 (2d Cir. 1994).[1]

Defendants further argue that the evidence was insufficient to permit a reasonable jury to find that the charged conspiracy affected a financial institution, as required to afford the government the benefit of the ten-year statute of limitations specified in 18 U.S.C. § 3293(2). In fact, evidence of referral fees paid to John Manella, Bradley, and Jay Gordon in connection with "HOMER" tax shelter transactions permitted a reasonable jury to find this effect requirement satisfied in the manner charged by the district court, i.e., by obtaining monies that Bank One would otherwise not have paid, or at the very least, not to these persons. Cf. United States v. Aguilar, 585 F.3d 652, 656 (2d Cir. 2009).

b.    Tax Evasion

Ohle next argues that the trial evidence was insufficient to permit any reasonable jury to find him guilty of attempted tax evasion. He submits that he did not have fair notice that his conduct in entering into the complex "1256" tax shelter transaction at issue, see 26 U.S.C.

---

[1] Insofar as defendants submit that their conspiracy convictions are repugnant to law because Bank One was itself guilty of marketing unlawful tax shelters, the argument fails because the scheme to defraud Bank One, whatever its culpability, was only part of the charged conspiracy to avoid paying federal taxes to the United States on criminally obtained monies. See James v. United States, 366 U.S. 213, 221 (1961) (refusing to "perpetuate the injustice of relieving embezzlers of the duty of paying income taxes on the money they enrich themselves with while honest people pay their taxes on every conceivable type of income").

1256, could constitute a willful attempt to evade federal income taxes, see 26 U.S.C. § 7201. Neither argument is persuasive.

Trial evidence showed that Ohle, a tax lawyer and certified accountant, stated to various "1256" shelter participants that the vehicle was structured to limit their actual risk of loss to the amount invested. The jury heard further evidence indicating Ohle's knowledge that the investment would generate paper losses in far larger—i.e., multimillion dollar—amounts. It also heard that Ohle nevertheless made false statements to another tax lawyer regarding the nature of the shelter transaction to obtain an opinion letter indicating that his own investment objectives and his claimed tax deduction from these paper losses were lawful. Where the evidence so convincingly demonstrates an intent to defraud the United States of taxes owed, we need not delineate the precise boundaries of the "at risk" or "primarily for profit" theories of evasion pursued by the government, see 26 U.S.C. §§ 465(b)(4), 165(c)(2), in order to reject Ohle's fair notice argument on the merits, see United States v. Tannenbaum, 934 F.2d 8, 11 (2d Cir. 1983) (rejecting fair warning challenge where ample trial evidence demonstrated that defendant knew he was committing unlawful act).

c.      Venue

Defendants argue that the trial evidence was insufficient to permit a preponderance finding that the charged crimes were properly venued in the Southern District of New York. See United States v. Rommy, 506 F.3d 108, 119 (2d Cir. 2007) (discussing preponderance standard for venue). Venue is proper where the defendant intentionally or knowingly caused

5

an act in furtherance of the charged offense to occur, or where the defendant could reasonably foresee that such an act would occur as a result of his own conduct. See United States v. Svoboda, 347 F.3d 471, 483 (2d Cir. 2003).

### i.    Conspiracy

For a conspiracy charge, venue lies in any district in which an overt act in furtherance of the conspiracy was committed by any conspirator. See id. at 482-83. This can include evidence that a conspirator traveled into the district, see United States v. Nathan, 476 F.2d 456, 461-62 (2d Cir. 1973), or directed communications into the district, see United States v. Rommy, 506 F.3d at 120, in furtherance of the charged scheme.

Defendants argue that the only relevant acts proved to have occurred in the Southern District of New York predated the charged conspiracy. The argument is grounded in defendants' contention that acts relating to the Ames trust embezzlement, many of which occurred in the Southern District of New York, could not be viewed as part of the later referral-fee scheme. Having already concluded that a reasonable jury could find all these activities to be part of the single charged conspiracy against the United States, we reject defendants' argument that overt acts in the Southern District of New York pertaining to the Ames trust do not suffice to satisfy venue on the conspiracy count.

### ii.    Tax Evasion

A tax evasion charge is properly venued wherever a defendant's attempt to evade taxes was begun, continued, or completed. See United States v. Drachenberg, 623 F.3d 122, 125 (2d Cir. 2010); cf. Spies v. United States, 317 U.S. 492, 499 (1943) (holding that "any

6

conduct, the likely effect of which would be to mislead or to conceal" can be affirmative act of tax evasion).

As to Count 2, a reasonable jury could find venue in the Southern District of New York based on wire transfers that Ohle directed others to send from the United States to Bermuda and back because they passed through New York correspondent banks.[2] The evidence showed that (1) on November 19, 2001, Ohle directed Charles Schwab to wire transfer $7 million from Ames trust accounts in San Francisco to Carpe Diem accounts in Bermuda; (2) on November 27, 2001, Ohle directed Schwab to transfer an additional $347,834.04 from the San Francisco accounts to the Carpe Diem Bermuda accounts; (3) on December 3, 2001, Ohle directed Carpe Diem to transfer $300,000 back to United States accounts; and (4) on December 7, 2001, Ohle directed Carpe Diem to transfer the full $347,834.04 back to United States accounts. A reasonable jury could find that as a sophisticated lawyer and tax accountant, Ohle would have foreseen that these international wire transfers would necessarily pass through New York correspondent banks. See Citibank, N.A. v. Wells Fargo Asia Ltd., 495 U.S. 660, 663 (1990) ("To complete [international] transactions, most banks that participate in the interbank trading market utilize correspondent banks in New York City, with whom they maintain, directly or indirectly, accounts denominated in United States dollars.").

_____

[2] In light of Ohle's sophistication, the fact that he sent multiple transfers through New York correspondent banks, and the independent record evidence supporting the reasonable conclusion that the transfers served a tax evasion purpose, we find it is unnecessary to express a view regarding whether a showing of only a single such transfer, without more, could establish venue on a tax evasion charge in the Southern District of New York.

7

Further, while the most obvious purpose of these transfers was to swindle the Ames trust undetected, the following evidence supports a reasonable preponderance that all four transfers also served a tax evasion purpose. See Spies v. United States, 317 U.S. at 499. First, regarding the $7 million and $300,000 transfers, Edward Doherty at Carpe Diem testified that Ohle told him that the Ames trust planned to make a single payment to Carpe Diem in Bermuda that would include Ohle's $300,000 "commission," and that Carpe Diem should then wire Ohle's "commission" back to the United States. See Trial Tr. at 1009. An IRS agent testified that Carpe Diem wired the $300,000 back not to Ohle but, rather, to an "Invested Interest" account held by one of Ohle's associates, Jonathan Freedman. See id. at 1962-63. The IRS agent further testified that Freedman then transferred $250,000 of the $300,000 total to Brown to fund Brown's role in the fraudulent referral fee scheme, and only sent the remaining $50,000 on to Ohle personally. See id. From the totality of this evidence, a jury could reach a preponderance finding that Ohle concocted this first sequence of international wire transfers not just to steal and hide his theft from the Ames trust, but also to hide from tax authorities $250,000 of the $300,000 total income that he thereby received.

Second, regarding the two $347,834 transfers, Doherty testified that the first of these transfers was characterized as an "overpayment" on the Ames trust investment. See Trial Tr. at 1010-11. After Carpe Diem received the "overpayment," Ohle told Carpe Diem that the Ames account in San Francisco had been closed, and that the "overpayment" should thus be returned to a different trust account, see id. at 1011-12, an account that the IRS agent identified as the same Freedman account to which Ohle's $300,000 "commission" had been

8

wired.  See id. at 1964.  The IRS agent further testified that Freedman transferred $250,000 of the $347,834 total to Brown, and only the remaining $97,834 to Ohle personally.  See id. at 1964-65.  Again, a reasonable jury could infer from the totality of the circumstances that Ohle devised the second sequence of wire transfers to hide $250,000 of $347,834 in embezzled income from tax authorities.

Ohle's venue challenge to Count 3 merits little discussion.  Trial evidence showed that Ohle directed misleading communications to a lawyer in the Southern District of New York in order to obtain an opinion letter regarding the "1256" shelter that would facilitate his evasion of federal taxes.  A jury reasonably could have easily concluded that this conduct was intended to mislead or conceal information about Ohle's tax liability and, thus, that the attempted tax evasion charge in Count 3 was also properly venued in the Southern District of New York.  See United States v. Gross, 276 F.2d 816, 820 (1960).

### 2. Bradley's Sentencing Challenge

Bradley argues that his sentence is infected by procedural error, specifically, a miscalculation of his Sentencing Guidelines range by (1) the application of a two-level enhancement for abuse of trust, see U.S.S.G. § 3B1.3; (2) the refusal to apply a two-level minor-participant adjustment, see id. § 3B1.2(b); and (3) a miscalculation of the loss resulting from his offenses, see id. § 2B1.1(b)(1).  We review these sentencing challenges for reasonableness, a standard akin to abuse of discretion, see United States v. Cavera, 550 F.3d 180, 187 (2d Cir. 2008) (en banc), and we conclude that each challenged Guidelines calculation is supported by a preponderance of the evidence.  See United States v. Garcia,

9

413 F.3d 201, 220 n.15 (2d Cir. 2005). Even if we were to conclude otherwise, however, any error would have been harmless because the sentencing record unambiguously indicates that the district court would have imposed the same below-guidelines sentence of 12 months' imprisonment regardless of the Guidelines. See United States v. Jass, 569 F.3d 47, 68 (2d Cir. 2009); accord United States v. Feldman, 647 F.3d 450, 460 (2d Cir. 2011).

3. Forfeiture Challenges

We review defendants' challenges to the district court's forfeiture orders for abuse of discretion. See United States v. Gaskin, 364 F.3d 438, 461-62 (2d Cir. 2004).

a. Bradley's Forfeiture Challenge

Bradley's challenge to the order that he forfeit $255,000 appears to rest on the mistaken premise that he can only be required to forfeit fraud proceeds that he personally kept. To the contrary, 18 U.S.C. § 981(a)(1)(C) authorizes forfeiture of "[a]ny property . . . which constitutes or is derived from proceeds traceable to" the offense, id., whether kept by the defendant or shared with others, see United States v. Uddin, 551 F.3d 176, 181 (2d Cir. 2009). We identify no clear error in the district court's factual finding that Bradley obtained $255,000 in proceeds from Bank One traceable to the charged conspiracy, and that any payments Bradley made from these proceeds to Manella were not for services Manella rendered to Bank One. Accordingly, we reject Bradley's forfeiture challenge on the merits.

b. Ohle's Forfeiture Challenge

Ohle argues that the district court erred in ordering him to forfeit $2,954,344. As with Bradley, we identify no clear error in the district court's factual finding that Ohle received

10

$2,954,344 constituting, or derived from, proceeds traceable to the charged conspiracy. See 18 U.S.C. § 981(a)(1)(C). Specifically, we cannot say that the district court clearly erred in finding that $697,934 in funds embezzled from Ames constituted proceeds traceable to the conspiracy, and that, in light of the fact that these embezzled funds were used to fund Ken Brown's role in the conspiracy, the $1 million Brown later paid to Ohle was "derived from" those earlier proceeds. Id.

4.    New Trial

Finally, Ohle and Bradley assert that the government's failure to make disclosures required by Brady v. Maryland, 373 U.S. 83, compelled the district court to grant them a new trial. See Fed. R. Crim. P. 33. Here again, our standard of review is abuse of discretion. See United States v. Brunshtein, 344 F.3d 91, 101 (2d Cir. 2003). Having reviewed the district court's thoughtful and meticulous opinion denying defendants' Rule 33 motions, see United States v. Ohle, No. 3:08cr1109 (JSR), 2011 WL 651849 (S.D.N.Y. Feb. 7, 2011), we reject their Brady claim as meritless.

Defendants can point to only one potentially material document that was not contained in the original electronic database turned over by the government. For the reasons stated by the district court, defendants cannot show a reasonable probability that timely disclosure of this document would have resulted in a different outcome at trial. See id. at *5-6; United States v. Persico, 645 F.3d 85, 111 (2d Cir. 2011); United States v. Brunshtein, 344 F.3d at 101. Accordingly, there is no need to remand, as defendants urge, for an evidentiary hearing on their Brady claims. Cf. United States v. Erb, 543 F.2d 438, 443 (2d Cir. 1976) (rejecting argument that claim of evidence suppression required evidentiary hearing).

11

We have considered defendants' remaining arguments and conclude that they are without merit.  For the foregoing reasons, the judgments of conviction are AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court