Judge Rosemary Ledet
11 This is a damages suit, based on an alleged fraudulent scheme, against four defendants. From the trial court’s judgment granting all four defendants’ peremptory exceptions of prescription and one defendant’s declinatory exception of lack of personal jurisdiction, the plaintiff appeals. For the reasons that follow, we affirm the trial court’s judgment in all respects except for the granting of the peremptory exception of prescription as to one of the defendants. We remand with instructions to conduct an evidentiary hearing on the prescription exception as to that one defendant.
FACTUAL AND PROCEDURAL BACKGROUND
On December 29, 2014, the plaintiff, John Brewster Ohle, III, commenced this suit against the following four defendants:
1. The Ecetra N. Ames 1999 Charitable Remainder Unitrust (the “Ames Trust”)—a trust created in and ad *4 ministered under the laws of the State of Louisiana appearing through its current trustee, Steven O. Medo, Jr.;[1]
\>2. Anthony Ames—a resident of Atlanta, Georgia; Eeetra Ames’ husband; and an income beneficiary of the Ames Trust;
3. Hugh Uhalt—Mrs. Ames’ son and the individual who purported to have a power of attorney for Mrs. Ames; and
4. John Wogan—the successor trustee of the Ames Trust following Mr. Ohle’s resignation as trustee.
In his petition, Mr. Ohle asserts the following three theories of liability: (i) fraud, (ii) conspiracy to defraud, and (iii) breach of contract. The gist of the allegations in his petition is that the defendants engaged in a fraudulent scheme to accomplish the following three results: [i] unlawfully remove millions of dollars from the Ames Trust; [ii] insert Mr. Wogan as successor trustee; and [iii] wrongfully recover monies through “unlawful forfeiture/restitution orders.” Mr. Ohle averred that “[t]he acts, omissions, misrepresentations and concealments of the defendants and [Mrs.] Cetie Ames caused and/or contributed to [Mr.] Ohle losing valuable property rights and to being wrongfully criminally charged, tried, convicted, imprisoned, fined, and defamed, both professional and personally.”[2]
Although the alleged actions on which his claims were based occurred between 2002 and 2011, Mr. Ohle averred in his petition that he did not discover the fraudulent scheme until conducting discovery in other matters in 2014. He further averred that the alleged fraudulent scheme had continued and was aided and abetted by the United States Attorney for the Southern District of New York. Mr. Ohle still further averred that the defendants’ acts, omissions, and fraudulent scheme constituted a breach of contracts and agreements, including the confidentiality provisions of the Settlement Agreement among him, Mrs. Ames, [aMr. Ames, and the Ames Trust that was entered into on October 14, 2003. The gist of his breach of contract claim is that the defendants have discussed facts subject to the confidentiality provision of the Settlement Agreement with numerous third parties thereby breaching that provision.
In response to the petition, all four defendants filed a peremptory exception of prescription; Mr. Ames additionally filed a declinatory exception of lack of subject matter jurisdiction.[3] The trial court, as noted, granted all four defendants’ peremptory exceptions of prescription and Mr. Ames’ declinatory exception of lack of personal jurisdiction. This appeal followed.
DISCUSSION
On appeal, Mr. Ohle asserts the following three assignments of error:
1. The district court erred in finding that the breach of contract claims had prescribed,
*5 2. The district court erred in finding the breach of contract claims only applicable to two of the four defendants—Mr. Ames and the Ames Trust.
3. The district court erred in finding no personal jurisdiction as to Mr. Ames.
We divide our analysis into two parts: prescription and personal jurisdiction over Mr. Ames. We first address the personal jurisdiction issue.

Personal jurisdiction

When reviewing a trial court’s legal ruling on a declinatory exception of lack of personal jurisdiction, an appellate court applies a de novo standard. Winston v. Millaud, 05-0338, p. 5 (La.App. 4 Cir. 4/12/06), 930 So.2d 144, 149-50 (noting that “jurisdiction itself is a question of law subject to de novo review.”); Walker v. Super 8 Motels, Inc., 04-2206, p. 4 (La.App. 4 Cir. 12/7/05), 921 So.2d 983, 986. In de Reyes v. Marine Management and Consulting, Ltd., 586 So.2d 103 (La. 1991), the Louisiana Supreme Court subdivided the method of proving an exception of lack of personal jurisdiction into two categories—with a contradictory hearing and without such a hearing. Explaining these categories, the Supreme Court stated the following:
If there had been a contradictory evi-dentiary hearing, plaintiff would have had to prove facts in support of her showing that jurisdiction was proper by a preponderance of the evidence. However, under constitutional and codal principles, when the trial court decides the jurisdictional issue without a contradictory evidentiary hearing, as it has done in the present case, the burden of the non-moving party is relatively slight and allegations of the complaint and all reasonable inferences from the record are to be drawn in favor of the non-moving party.
de Reyes, 586 So.2d at 109 (citing La. C.C.P. arts. 925, 930; and American Greetings Corp. v. Cohn, 839 F.2d 1164 (6th Cir. 1988)).[4]
A contradictory hearing, for purposes of an exception of lack of personal jurisdiction, is defined based upon “the methods of proof set out in de Reyes and its progeny” as requiring live testimony be taken. Jacobsen v. Asbestos Corp. Ltd., 12-655, pp. 6-7 (La.App. 5 Cir. 5/30/13), 119 So.3d 770, 775-76 (noting that “a contradictory hearing is not considered to have taken place unless live testimony is taken.”). Thus, a contradictory hearing requires more than simply oral argument on the exception of lack of personal jurisdiction.
[^Louisiana courts routinely have decided exceptions of lack of personal jurisdiction without a contradictory hearing based solely on written documentation, including the petition and affidavits.[5] In so doing, *6 Louisiana courts have accepted the allegations in the petition as true “except as controverted by the defendant’s affidavit.” Lifecare Hospitals, Inc. v. B & W Quality Growers, Inc., 39,065, p. 8 (La.App. 2 Cir. 10/27/04), 887 So.2d 624, 630.
A state court’s authority to exercise personal jurisdiction over a non-resident defendant is governed by the Louisiana Long-Arm Statute, La. R.S. 13:3201 (the “LAS”).[6] The limits of the LAS and constitutional due process are coextensive. Superior Supply Co. v. Associated Pipe and Supply Co., 515 So.2d 790, 792 (La. 1987); La. R.S. 13:3201(B)(allowing for Louisiana courts to exercise personal jurisdiction over nonresident defendants “on any basis consistent with the constitution of this state and the Constitution of the United States.”).
The exercise of personal jurisdiction over a non-resident defendant comports with due process when the following two prongs are satisfied: (i) the defendant has certain “minimum contacts” with the forum state; and (ii) as a result of those contacts, the maintenance of the suit would not offend traditional notions of fair play and substantial justice. Dahmes v. Champagne Elevators, Inc., 03-0807, 03-0983, pp. 4-5 (La.App. 4 Cir. 3/3/04), 869 So.2d 904, 908 (citing International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)); de Reyes, supra; see also J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 880, 131 S.Ct. 2780, 2787, 180 L.Ed.2d 765 (2011).
As to the “minimum contacts” prong, “[ojpinions in the wake of the path-marking International Shoe decision have differentiated between general or all-purpose jurisdiction, and specific or case-linked jurisdiction.” Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. *7 915, 919, 131 S.Ct. 2846, 2851, 180 L.Ed.2d 796 (2011) (citing Helicópteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, nn. 8, 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). Explaining the difference, the Supreme Court noted:
|7A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so “continuous and systematic” as to render them essentially at home in the forum State. Specific jurisdiction, on the other hand, depends on an “affiliatio[n] between the forum and the underlying controversy,” principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State’s regulation. In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of “issues deriving from, or connected with, the very controversy that establishes jurisdiction.”
Goodyear, supra (internal citations omitted). Simply stated, “[a] state exercises general jurisdiction when the defendant’s contacts with the state are not related to the lawsuit. Specific jurisdiction, on the other hand, is exercised when the suit arises out of or is related to the defendant’s contacts with the forum.” Dahmes, 03-0807, 03-0983 at p. 5, 869 So.2d at 908.
The initial burden of proving sufficient minimal contacts to establish personal jurisdiction is imposed on the party that is asserting jurisdiction is proper, de Reyes, 586 So.2d at 107; Swoboda v. Hero Decks, 09-1303, p. 2 (La.App. 4 Cir. 3/31/10), 36 So.3d 994, 997 (noting that the party seeking to invoke personal jurisdiction bears the burden of establishing such jurisdiction exists.). Once sufficient minimum contacts have been established, a presumption of reasonableness of jurisdiction arises, de Reyes, supra. “The burden then shifts to the opposing party to prove the. assertion of jurisdiction would be so unreasonable in light of traditional notions of fair play and substantial justice as to overcome the presumption of reasonableness created by the defendant’s minimum contacts with the forum.” Id.[7]
|sIn the instant case, Mr. Ohle, in his petition, asserted personal jurisdiction over Mr. Ames, a resident of Georgia, through the LAS. In response, Mr. Ames filed an exception of lack of personal jurisdiction contending that Mr. Ohle failed to establish the minimum contacts prong by proving either general or specific jurisdiction. Mr. Ames argued that specific jurisdiction was lacking because none of the causes of action Mr. Ohle asserted in his petition alleged an act or omission by Mr. Ames in Louisiana. Mr. Ames argued that general jurisdiction likewise was lacking because he engaged in no course of conduct that subjected him to jurisdiction in this state. In support of his exception of lack of personal jurisdiction, Mr. Ames submitted his own affidavit, dated March 31, 2015, in which he attested to the following facts:
• He is a resident and domiciliary of Atlanta, Georgia;
• He is an architect, and his practice is based in Atlanta, Georgia;
*8 • In his business, he has neither contracted nor sold goods or services in the State of Louisiana;
• He did not market or distribute goods in the State of Louisiana;
• He did not derive revenue from goods used or consumed or services rendered in Louisiana;
• He did not transact business in Louisiana;
• He never manufactured products in Louisiana;
• He has no place of business, mailing address, bank account, or telephone listing in the State of Louisiana;
• He does not own, use, or possess any real or personal property in the State of Louisiana;
[• He is not the creator or grantor of the Ames Trust; and
• He is not a trustee of and has no control or oversight over the Ames Trust, nor does he have any control or decision-making authority regarding the Ames Trust or any investment of the trust.
Although a hearing was held on the exceptions, the parties presented only oral argument; no witnesses testified, and no evidence was introduced. Thus, there was no contradictory hearing. Jacobsen, supra. Given a contradictory hearing was not held, Mr. Ohle needed to make only a prima fade showing of personal jurisdiction.
In granting Mr. Ames’ exception of lack of personal jurisdiction, the trial court, in its written reasons for judgment, stated that “[t]he evidence demonstrated that Mr. Ames did not have sufficient contacts with this state to find that the state had jurisdiction over him. While he was a party to the Settlement Agreement that was entered into in 2003, there was no evidence that he had engaged in a course of conduct since that time that would subject him to the jurisdiction of this court.” The trial court’s reference to the lack of a “course of conduct” evidences it found this case involved an allegation of general jurisdiction. “For an individual, the paradigm forum for the exercise of general jurisdiction is the individual’s domicile.” Goodyear Dunlop Tires Operations, 564 U.S. at 924, 131 S.Ct. at 2853. Here, Mr. Ames’ domicile was in Atlanta, Georgia. Mr. Ames’ affidavit, which Mr, Ohle failed to controvert, established his lack of a continuous course of conduct in this state. We thus find no error in the trial court’s finding that general jurisdiction is lacking.
On appeal, Mr. Ohle does not dispute the lack of general jurisdiction; rather, he focuses his argument on specific jurisdiction. He argues that the trial court erredJjjin failing to find that the State of Louisiana has specific jurisdiction over Mr. Ames pursuant to the LAS. In support, he cites the following three facts:
1. Mr. Ames was the beneficiary of the Ames Trust, which was established in Louisiana. The Ames Trust expressly provides it is governed by the laws of the State of Louisiana.
2. Mr. Ames filed a lawsuit related to the Ames Trust in the State of Louisiana and agreed to a consent judgment on the accounting of the Ames Trust and signed the Settlement Agreement out of which this suit arose.
3. On June 3, 2014, Mr. Ames voluntarily provided deposition testimony in another related matter, Uhalt v. J.P. Morgan Chase, et al., No. 11-440, Civil District Court for the Parish of Orleans (“CDC”). Mr. Ames breached the terms of the Settlement Agreement during that deposi *9 tion, which was taken in the State of Louisiana.
We find none of these three facts sufficient to support a finding of specific jurisdiction. First, the fact that Mr. Ames was an income beneficiary of the Ames Trust is not a fact out of which this suit arises. Regardless, Mr. Ames attested in his un-controverted affidavit that he was not a trustee of, and had no control or oversight over, the Ames Trust. He further attested that he had no control or decision-making authority regarding either the Ames Trust or any investment of the trust.
Although this suit arises out of the alleged breach of the Settlement Agreement, there is no evidence in the record that the Settlement Agreement was entered into in the State of Louisiana.[8] Regardless, “[a]n individual’s contract with an out-of-state party alone cannot establish minimum contacts in the home forum.” A & L Energy, Inc. v. Pegasus Group, 00-8255, p. 7 (La. 6/29/01), 791 So.2d 1266, 1272. We further note that the petition does not contain a specific allegation that |„ Mr. Ames breached the Settlement Agreement; rather, the petition alleges the following:
• “[M]r. Wogan and others intentionally breached these confidentiality provisions [of the Settlement Agreement] in the Southern District of New York and before the Louisiana CPA Board.
• “[Defendants, Cetie Ames and others acting on their behalf continue to breach the Settlement Agreement and the confidentiality provisions contained therein by publicizing false statements in the public records and to various licensing authorities (including without limitation [Mr.] Wogan’s appearance before the Louisiana Board of CPAs in August 2013).”
• The acts, omissions and concealments of the defendants described herein constitute a breach of the contracts and agreements (including the confidentiality provisions contained in the Settlement Agreement) between the plaintiff and Cetie Ames, Tony Ames and the Ames CRUT.”
As the above-quoted averments reflect, the petition generally alleges that the “defendants” breached the confidentiality provisions of the Settlement Agreement. A plaintiff “may not aggregate factual allegations concerning multiple defendants in order to demonstrate personal jurisdiction over any individual defendant.” National Community Reinvestment Coalition v. NovaStar Financial, Inc., 631 F.Supp.2d 1, 3 (D.D.C. 2009) (citing Rush v. Savchuk, 444 U.S. 320, 331-32, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980) (rejecting aggregation of co-defendants’ forum contacts in determining personal jurisdiction because “the requirements of International Shoe must be met as to each defendant over whom a ... court exercises jurisdiction”).
Nor does Mr. Ohle’s petition, as Mr. Ames points out, allege that Mr. Ames breached the Settlement Agreement while being deposed in the State of Louisiana on June 3, 2014. To the contrary, the petition cites Mr. Ames’ deposition testimony | ^as evidence supporting Mr. Ohle’s claim of the defendants’ fraudulent scheme.[9] Thus, *10 Mr. Ames’ deposition testimony was not alleged in the petition to constitute a breach of the Settlement Agreement. Regardless, as Mr. Ames points out, Mr. Ohle cites no case law supporting his position that “sitting for a deposition in another legal matter in this State is sufficient to subject Mr. Ames to jurisdiction in Louisiana.” Indeed, this proposition lacks legal support.
In sum, given the uncontroverted facts set forth in Mr. Ames’ affidavit coupled with the allegations of the petition, we find Mr. Ohle failed to establish the minimum contacts prong through proving either general or specific jurisdiction. We thus find no error in the trial court’s judgment granting Mr. Ames declinatory exception of lack of personal jurisdiction.

Prescription

Generally, the party raising a peremptory exception of prescription bears the burden of proof. Felix v. Safeway Ins. Co., 15-0701, p. 4 (La.App. 4 Cir. 12/16/15), 183 So.3d 627, 630. This general rule applies unless prescription is evident from the face of the pleadings; if the claim is prescribed on the face of the petition, the burden shifts to the plaintiff to show that the claim has not prescribed. Spott v. Otis Elevator Co., 601 So.2d 1355, 1361 (La. 1992). On the trial of a peremptory exception of prescription pleaded prior to trial on the merits, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition. La. C.C.P. art. 931.
| iaThe standard of review of a peremptory exception of prescription depends on whether evidence was presented. Miralda v. Gonzalez, 14-0888, pp. 17-18 (La. App. 4 Cir. 2/4/15), 160 So.3d 998, 1009. “In the absence of evidence, the exception of prescription must be decided on the facts alleged in the petition, which are accepted as true.” Denoux v. Vessel Mgmt. Servs., Inc., 07-2143, p. 6 (La. 5/21/08), 983 So.2d 84, 88; Felix, 15-0701 at p. 5, 183 So.3d at 631. Such is the case here.
On appeal, Mr. Ohle does not assign as error the trial court’s finding that his tort claims of fraud and conspiracy to defraud were prescribed; instead, he raises two assignments of error related solely to the breach of contract claims. As noted elsewhere, he claims the breach of contract claims are not prescribed and that the trial court erred in finding the breach of contract claim did not apply to Mr. Uhalt and Mr. Wogan.
Addressing Mr. Ohle’s breach of contract claims, the trial court, in its written reasons for judgment, stated as follows:
As for the breach of contract claims, this claim can only be asserted against defendants, Mr. Ames and the Ecetra N. Ames 1999 Charitable Remainder Uni-trust. Pursuant to C.C. article 3499, breach of contract claims are subject to a ten year prescriptive period. However, the Settlement Agreement that was alleged to have been breached was signed in 2003 which is over ten years prior to this suit being filed. Therefore, the court finds that these claims have also prescribed.
We first address Mr. Ohle’s argument that the trial court erred in limiting the parties to whom the breach of contract claim applies to the named defendants who were parties to the Settlement Agreement. He contends that the trial court ignored the following two facts in finding the contract *11 claim did not apply to Mr. Uhalt and Mr. Wogan:
114.(1) Ecetra Ames was also a signatory to the Settlement Agreement and allegedly breached its terms within ten years prior to the filing of the lawsuit. However, because Ecetra Ames was interdicted by her son, Hugh Uhalt, Uhalt is a proper defendant in her stead for breaches of the contract that continue to this day.
(2) John Wogan was Ecetra Ames’ attorney responsible for drafting the Settlement Agreement and obtaining the Consent Judgment in the final trust accounting, and, if that were not enough, he became successor trustee to Ohle of the CRUT after execution of the Settlement Agreement and entering of the Consent Judgment.
According to Mr. Ohle’s petition, the parties to the Settlement Agreement are Mr. Ohle, Mrs. Ames, Mr. Ames, and the Ames Trust. Although the defendants argue that the Ames Trust likewise was not a party to the Settlement Agreement, the parties failed to introduce the Settlement Agreement at the hearing on the exceptions. The record thus does not include a copy of the Settlement Agreement.
Given no evidence was introduced at the hearing on the exceptions, we must accept as true allegations of the petition. Doing so, we conclude that only two of the four defendants—Mr. Ames and the Ames Trust—are parties to the Settlement Agreement. Dispositive of the first issue Mr. Ohle raises regarding the breach of contract claims is this court’s holding that “it is obvious that an individual cannot be liable for breach of a contract to which he is not a party.” B-G & G Inv’rs VI, L.L.C. v. Thibaut HG Corp., 08-0093, p. 6 (La. App. 4 Cir. 5/21/08), 985 So.2d 837, 842. Applying this principle, we find no error in the trial court’s ruling limiting Mr. Ohle’s breach of contract claims to the parties to the Settlement Agreement—Mr. Ames and the Ames Trust.
The second issue Mr. Ohle raises regarding the breach of contract claims is that the trial court erred in finding that prescription on these claims commenced to run from the date the Settlement Agreement was signed—October 14, 2003—as opposed to the date the contract was breached. See La. C.C. art. 3499 (providing lifithat “a personal action is subject to a liberative prescription of ten years.”). Stated otherwise, Mr. Ohle contends that prescription on a breach of contract claim runs from the date of the alleged breach, not the date the contract was signed. See Donald G. Lambert Contractor, Inc. v. Parish of Jefferson, 97-140, p. 7 (La.App. 5 Cir. 9/17/97), 700 So.2d 894, 897 (noting that “[i]t is well settled that the ten year prescriptive period for liberative prescription commences to run at the time of the breach or at the time the cause of action arises.”). Although the point Mr. Ohle raises is correct, it is well-settled that appellate courts review judgments not reasons for judgments. Wooley v. Lucksinger, 09-0571, 09-0584-86, p. 77 (La. 4/1/11, 61 So.3d 507, 572 (collecting cases and citing La. C.C.P. arts. 1918, 2082 and 2083). “Judgments are often upheld on appeal for reasons different than those assigned by the district judges.” Id.
The narrow issue before us is thus whether the trial court correctly held that the breach of contract claims against Mr. Ames and the Ames Trust are prescribed. As to Mr. Ames, our finding that the trial court correctly granted his declinatory exception of lack of personal jurisdiction is dispositive. As to the Ames Trust, a review of the relevant facts, as alleged in the petition, is necessary.
*12 The petition reflects the following pertinent time line of events.
In December 1999, Ms. Ames, as settlor, established the Ames Trust; and Mr. Ohle was named trustee.
In 2001, both Mrs. Ames, individually, and Mr. Ohle, on behalf of the Ames Trust, invested in Société Generate warrants (“SocGen Warrants”)—also referred 11fito as Carpe Diem Dynamic Fund Linked Warrants.[10] Mrs. Ames, individually, invested $5 million in the SocGen'Warrants. Mr. Ohle, on behalf of the Ames Trust, invested $2 million in the SocGen Warrants. A 5% commission was withheld from both transactions—$250,000 was withheld from Mrs. Ames’ $5 million personal investment; $100,000 was withheld from the Ames Trust’s $2 million investment. According to Mrs. Ames, she was unaware any fees would be charged for the purchase of the SocGen Warrant.
In 2002, both Mr. Ohle, on behalf of the Ames Trust, and Mrs. Ames, individually, redeemed their investments in the SocGen Warrants. Mr. Ohle avers in his petition that “[Mrs.] Ames directed Société Generate to transfer the proceeds from the liquidation of the SocGen Warrants into the Ames [Trust].” Mrs. Ames, however, strongly disputed Mr. Ohle’s position that she so directed him to transfer the proceeds—which were in the amount of $4,100,549.27—to the Ames Trust. Following this transaction, Mrs. Ames, represented by counsel (Mr. Wogan), demanded an accounting from Mr. Ohle of his actions as trustee.
In October 2003, Mr. and Mrs. Ames and the Ames Trust entered into the Settlement Agreement with Mr. Ohle. As part of the settlement, Mr. Ohle resigned as trustee of the Ames Trust in September 2003.
In March 2004, Mrs. Ames and the Ames Trust (through Mr. Wogan) filed with the Internal Revenue Service a Request for a Private Letter Ruling, In connection with that Request for a Private Letter Ruling, Mr. and Mrs. Ames and Mr. Wogan, as trustee of the Ames Trust, filed a verified Petition for Instructions in CDC in which the following allegations were made:
| 17The former Trustee [Mr. Ohle] did not inform the Settlor [Mrs. Ames] that the Redemption Notice directed that the Transferred Funds be deposited to the [Ames] Trust’s account, nor had Settlor told the former trustee that she wished to donate the transferred funds [$1.4 million roughly] to the Ames Trust. Set-tlor never intended to donate the transferred funds to the Ames Trust. Rather, she intended to temporarily deposit the funds in a money market account in her own name until she selected- a long-term investment.
In October 2009, Mrs. Ames filed suit against, among others, Mr. Ohle in federal court alleging claims under RICO as well as several state law claims. Ames v. Ohle, 2010 WL 5055893 (E.D. La. 2010). The federal court dismissed Ames’s RICO claims as untimely.
In January 2011, Mrs. Ames filed suit in CDC against, among others, Mr. Ohle. See Ames v. Ohle, 11-1540 (La.App. 4 Cir. 5/23/12), 97 So.3d 386. Also in January 2011, Ohle alleges that the defendants and Mrs. Ames “caused a fraudulent Victim Impact Statement to be filed in the U.S. District court the Southern District of *13 New York and continue to fraudulently claim victim status through the present day.”
In May 2011, Mr. Ohle was tried and convicted by a jury in the Southern District of New York. His conviction was affirmed in United States v. Ohle, 441 Fed. Appx. 798 (2d Cir. 2011) (unpub.).
With that time line in mind, we address Mr. Ohle’s argument. He contends that his breach of contract claim against the Ames Trust is not prescribed because it was filed within ten years of the date of the breach of the Settlement Agreement. Defendants counter that the Ames Trust, among others, filed the Petition for 1 ^Instructions in CDC and served this petition on Mr. Ohle in November 2004.[11] Shortly thereafter, Mr. Ohle submitted an affidavit in support of the Petition for Instructions, which established his actual knowledge of the alleged breach of the confidentiality provision of the Settlement Agreement and commenced the running of prescription, which was not interrupted or suspended. As noted elsewhere, defendants also contend that the Ames Trust is not a party to the Settlement Agreement.
The record on appeal contains neither the Settlement Agreement nor the Petition for Instructions and pleadings filed in that matter. Even the date of the filing of the Petition for Instructions is not asserted in the petition. Accepting the allegations of the petition as true, we cannot conclude the breach of contract claims against the Ames Trust are prescribed. See Taranto v. Louisiana Citizens Prop. Ins. Corp., 10-0105, p. 5 (La. 3/15/11), 62 So.3d 721, 726 (noting that the “jurisprudence provides that statutes involving prescription are strictly construed against prescription and in favor of the obligation sought to be extinguished.”). Indeed, the petition alleges a continuing breach by the defendants, including the Ames Trust, of the confidentiality provisions of the Settlement Agreement. Accordingly, we reverse the trial court’s judgment granting the exception of prescription as to the Ames Trust and remand for an evidentiary hearing on the exception as to that one defendant.
^JjgDECREE
For the foregoing reasons, the trial court’s judgment granting the peremptory exception of prescription as to the Ecetra N. Ames 1999 Charitable Remainder Uni-trust is reversed and this matter is remanded with instructions to conduct an evidentiary healing on that exception. In all other respects, the trial court’s judgment is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS

. The Ames Trust was executed in December 1999; Eeetra Ames was the settlor. Two income beneficiaries were named—Ms. Ames and her husband, Anthony Ames. Mr. Ohle was the initial trustee.

. In May 2011, Mr. Ohle was tried by a jury in the Southern District of New York. He was convicted of conspiracy to defraud the Internal Revenue Service and two counts of attempted tax evasion, His conviction was affirmed in United States v. Ohle, 441 Fed.Appx. 798 (2d Cir. 2011) (unpub.),

.Although all four defendants also filed peremptory exceptions of no cause of action and no right of action, the trial court did not expressly rule on these other exceptions.

. In American Greetings, supra, the federal court noted that when the trial court fails to hold a contradictory hearing, the plaintiffs burden is "relatively slight,” and the trial court is required to consider the pleadings and affidavits in the plaintiffs favor. 839 F.2d at 1168 (quoting Welsh v. Gibbs, 631 F.2d 436, 439 (6th Cir. 1980)(quoting Poston v. American President Lines, Ltd., 452 F.Supp, 568, 571 (S.D. Fla. 1978)); Visual Sciences, Inc. v. Integrated Communications Inc., 660 F.2d 56, 58 (2d Cir. 1981)(“In the absence of a full-blown hearing on the merits, plaintiff need make only a prima facie showing that the court has jurisdiction under a long-arm statute,”)

. See Ruckstuhl v. Owens Corning Fiberglas Corp., 98-1226, p. 2 (La. 4/13/99), 731 So.2d 881, 883 (noting the exception was "supported by an affidavit”); Superior Supply Co. v. Associated Pipe and Supply Co., 515 So.2d 790, 791 (La. 1987) (noting the personal jurisdiction exception was submitted on affidavits *6 and briefs); see also 1 Frank L. Maraist, LOUISIANA CIVIL LAW TREATISE; CIVIL PROCEDURE § 6:5 (2d ed.) (citing Marchand v. Asbestos Defendants, 10-0476, 10-543, 10-766 (La.App. 4 Cir. 11/10/10), 52 So.3d 196, and noting that ”[a]n affidavit is proper evidence on an exception of lack of personal jurisdiction.”).

. The LAS, La. R.S. 13:3201, provides as follows:
A. A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:
(1) Transacting any business in this state.
(2) Contracting to supply services or things in this state.
(3) Causing injury or damage by an offense or quasi offense committed through an act or omission in this state.
(4) Causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in this state.
(5) Having an interest in, using or possessing a real right on immovable property in this state.
(6) Non-support of a child, parent, or spouse or a former spouse domiciled in this state to whom an obligation of support is owed and with whom the nonresident formerly resided in this state.
(7) Parentage and support of a child who was conceived by the nonresident while he resided in or was in this state.
(8) Manufacturing of a product or component thereof which caused damage or injury in this state, if at the time of placing the product into the stream of commerce, the manufacturer could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and the manufacturer’s marketing practices.
B. In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.

. The second part of the due process test centers around the fairness of the assertion of jurisdiction. In determining this fundamental fairness issue, we must examine (1) the defendant’s burden; (2) the forum state's interest; (3) the plaintiff’s interest in convenient and effective relief; (4) the judicial system’s interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies. Ruckstuhl, 98-1126 at p. 14, 731 So.2d at 890.

. Mr. Ames points out that he and his wife signed that agreement in Nassau County, New York, and Mr. Ohle signed it in Wilmette, Illinois. Proof of this fact, however, is not in the record on appeal. Nor is a copy of the Settlement Agreement.

. For example, the petition alleges that "the deposition of' Tony Ames taken on June 3, 2014 revealfe] that these statements were fraudulently made to further the scheme described herein” and that "[t]he allegations in the Petition for Instructions made under oath by [Mr.] Wogan as trustee of the Ames CRUT, *10 Tony Ames, and Cetie Ames were contradicted by Tony Ames’ sworn deposition testimony on June 3, 2014.”

. As Mr. Ohle alleges in his petition, “SocGen Warrants sought capital appreciation over the medium term, by allocating the optimal leval of assets to the Carpe Diem Multi-Strategy Fund” and "[t]he Carpe Die-um Dynamic Fund had a 16.84% compound historical annual return.”

. As noted elsewhere in this opinion, neither the Petition for Instructions nor the pleadings filed in that matter, such as Mr. Ohle's affidavit, are in the record on appeal.