# Third District Court of Appeal
## State of Florida

Opinion filed February 26, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-1916
Lower Tribunal No. 22-11819
_____

**Gwen Ortega,**
Appellant,

vs.

**JW Marriott Investment, LLC, et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Pedro P. Echarte, Jr., Judge.

Eaton & Wolk, PL, and Douglas F. Eaton and Daniel R. Schwartz, for appellant.

Mitrani, Rynor, Adamsky & Toland, P.A., and Pamela A. Chamberlin, for appellees.

Before LOGUE, C.J., and EMAS and SCALES, JJ.

LOGUE, C.J.

Gwen Ortega appeals the trial court's final summary judgment in favor of JW Marriott Investment, LLC d/b/a JW Marriott Miami Turnberry Resort & Spa and TB Isle Resort LP d/b/a JW Marriott Miami Turnberry Resort & Spa (collectively, "Turnberry"). Ortega tripped and fell on a raised and unmarked concrete slab designed to anchor a vehicle gate-arm in a parking garage. The opinion of Ortega's expert that the condition of the slab violated industry standards and created an unreasonably dangerous condition for pedestrians was sufficient to establish a question of fact precluding summary judgment. Accordingly, we reverse.

## Background

On January 3, 2022, Ortega tripped and fell in a parking garage at the JW Marriott Miami Turnberry Resort & Spa. Ortega filed a negligence action against Turnberry and alleged she was "returning to her vehicle when she tripped and fell on [an] elevated section of the concrete that was in her path and constituted an unreasonably dangerous condition." Below are photographs contained in the parties' briefs showing the area where Ortega allegedly tripped, a gate-arm slab area that is the "elevated section of concrete" referred to in the operative complaint.



 

Turnberry moved for summary judgment and argued that Ortega's own admissions, as well as the photographs of the area, showed that the gate-arm concrete slab was open and obvious, and there was no evidence of any negligence on the part of Turnberry. In support of its motion, Turnberry relied on Ortega's deposition testimony.

In her deposition, Ortega testified she had worked at the resort for six years prior to the incident. On the days she worked, she parked in the same garage where the incident took place. On the morning of the incident, she was not working but she parked in the garage to meet a friend for a walk

around the golf course path. She parked in a handicapped[1] parking space immediately next to the exit gate. Ortega testified she had parked in that exact parking spot in the parking garage on prior occasions, both when she was working and when she was there to walk in her free time.

After parking in the garage, Ortega exited the garage on foot and met her friend for a walk. When she returned to the garage, Ortega testified she walked between the gate-arm and the pillar towards her car and tripped on the elevated cement slab causing her to fall. Ortega admitted she had previously seen the concrete gate-arm slab on other occasions when she had parked in the garage and had not tripped on it "[b]ecause [she] saw it." She acknowledged in her deposition that she "misjudged the height of it[.]"

Ortega acknowledged there were other ways to get to her vehicle when she parked in that spot, but testified she took that route on that day because it was the most direct. Ortega also acknowledged there was an orange cone where she fell, but testified she did not see it until after she fell because "it was over to the left." She later testified the cone had been moved by one of the first responders.

---

[1] Ortega admitted she is not handicapped, but she had a handicapped sticker that a friend gave her, and she used it to park in handicapped spaces in the garage.

Ortega filed a response in opposition to Turnberry's motion for summary judgment and relied on her deposition testimony, as well as the report of expert Ronald F. Zollo, PhD, P.E. dated March 28, 2022, Ortega's affidavit, and photographs of the area of the incident.

Dr. Zollo, a professor of engineering at the University of Miami, opined that the concrete gate-arm slab's lack of a painted edge and the lack of an alternative pathway to accommodate pedestrians like Ortega, combined with the known human factors of pedestrian behavior, made it difficult for Ortega to perceive the concrete gate-arm slab. Dr. Zollo explained that due to the lack of a painted edge, "a known and widely used and accepted warning device," the slab would not be "readily distinguishable" to a "normally attentive pedestrian." Dr. Zollo further opined that the platform's condition violated industry standards for safe walking on surfaces which required that walking surfaces be flush with the ground. Dr. Zollo also opined that these factors meant "[t]he subject walkway area was in a substandard condition of maintenance and unreasonably dangerous with regard to persons who are accessing this area." Dr. Zollo concluded that the combination of these conditions "was the likely direct cause of the injury incident[.]"

Ortega's affidavit, dated after her deposition, stated she "tripped and fell over the elevated section of concrete because [she] was not able to see

it." Ortega further attested that she "did not regularly take the direct path [she] took on the day of the incident." Ortega also attested that, during her deposition defense counsel misstated her prior testimony, and she asserted that she "consistently and clearly stated" she was "able to avoid tripping over the elevated section of concrete[ ] on prior occasions because [she] was able to see it." Finally, Ortega attested that "[w]hen opposing counsel asked me 'would it be fair to say that you misjudged the height of it?', by answering 'yes', [she] meant [she] misjudged that there was any change in elevation because [she] did not see the elevated section of concrete."

Turnberry filed a reply to Ortega's response in opposition to summary judgment and argued that Dr. Zollo's expert opinion and report were contradicted by Ortega's own account of the incident and her prior knowledge of the concrete gate-arm slab.

The trial court conducted a hearing on Turnberry's motion for summary judgment. At the conclusion of the hearing, the trial court granted Turnberry's motion, reasoning as follows:

> I believe [defense counsel] is correct. I believe that [Crawford v. Miller, 542 So. 2d 1050 (Fla 3d DCA 1989)] controls. The mere happening of this incident is not evidence of negligence, and [plaintiff has] not been able to direct this court's attention to what the supposed negligence was in the first instance. Certainly there was no duty to warn someone who has actual knowledge of a dangerous condition. The

7

condition in and of itself doesn't seem to be remotely dangerous in any way, shape, or form, and it is plainly visible. The motion for summary judgment is granted.

This appeal timely followed.

## Legal Analysis

"Properly understood, summary judgment is akin to a pre-trial directed verdict." CG Tides LLC v. SHEDDF3 VNB, LLC, 388 So. 3d 1081, 1084 (Fla. 3d DCA 2024). "Summary judgment is not designed to resolve disputed issues of fact. It merely serves to identify whether an issue of fact exists that must be resolved by trial." Id. at 1084-85. "The evidence in the summary judgment record is interpreted in the light most favorable to the non-moving party." Id. at 1085. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

> Once a court determines the summary judgment record contains conflicting evidence on a material issue of fact from which a factfinder could reach different conclusions by crediting some evidence over other evidence, the court does not resolve the factual dispute. It simply denies summary judgment and allows the case to proceed to trial.

CG Tides LLC, 388 So. 3d at 1085 (internal citation omitted).

8

Florida courts have long recognized landowners owe invitees two duties:

> (1) the duty to use reasonable care in maintaining the property in a reasonably safe condition, and; (2) the duty to warn of latent or concealed dangers which are or should be known to the owner and which are unknown to the invitee and cannot be discovered through the exercise of due care.

Grimes v. Family Dollar Stores of Fla., 194 So. 3d 424, 427 (Fla. 3d DCA 2016). These two duties are distinct from one another, and compliance with one does not necessarily mean that the landowner has complied with the other. Rocamonde v. Marshalls of Ma, Inc., 56 So. 3d 863, 865 (Fla. 3d DCA 2011).

Nevertheless, "some conditions are so obvious and not inherently dangerous that they can be said, as a matter of law, not to constitute a dangerous condition, and will not give rise to liability[.]" Dampier v. Morgan Tire & Auto., LLC, 82 So. 3d 204, 206 (Fla. 5th DCA 2012). Pursuant to this "open and obvious" doctrine, "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." Ashcroft v. Calder Race Course, Inc., 492 So. 2d 1309, 1312 (Fla. 1986) (emphasis and citation omitted). See also Brookie v. Winn-Dixie Stores, Inc., 213 So. 3d

9

1129, 1133 (Fla. 1st DCA 2017) (describing the "two types of obvious conditions that will not constitute a breach of a duty[,]" including: (1) where the condition is "open and obvious and not inherently dangerous," and (2) where the condition may be dangerous, but is "so open and obvious that an invitee may reasonably be expected to discover them to protect himself" (quoting Dampier, 82 So. 3d at 206)).

"The rule applied in these circumstances is to absolve the landowner of liability unless the landowner should anticipate or foresee harm from the dangerous condition despite such knowledge or obviousness." Dampier, 82 So. 3d at 206; Brookie, 213 So. 3d at 1133 (noting that "for analytical purposes," the two prongs of landowner duty "are not mutually exclusive, as the open and obvious nature of a condition may preclude a finding of a breach of either duty, as a matter of law").

Even if a dangerous condition is open and obvious, however, landowners may still be found to have a duty of care where some uncommon design or aspect of the condition creates a "hidden danger," a "trap," or an "optical illusion" not reasonably discoverable by an ordinarily prudent invitee. See Echevarria v. Lennar Homes, LLC, 306 So. 3d 327, 330 (Fla. 3d DCA 2020) (reversing grant of summary judgment against plaintiff injured by tripping on transition between porch and walkway that blended together to

10

create "optical illusion," because genuine issue of material fact existed as to whether porch design complied with building codes and whether such failure "concealed the step's presence" from the perspective of the plaintiff); Bejarano v. City of Coral Gables, 300 So. 3d 712, 714 (Fla. 3d DCA 2019) (reversing grant of summary judgment against plaintiff alleging that negligent placement of palm trees at intersection caused traffic accident by obstructing plaintiff's view).

In such cases, if the Court is unable to conclude as a matter of law that the open and obvious doctrine precludes recovery, then factual questions of the dangerousness and foreseeability of the condition remain for the finder of fact. See Lotto v. Point E. Two Condo. Corp., 702 So. 2d 1361, 1362 (Fla. 3d DCA 1997) (reversing summary judgment against plaintiff injured by tripping on cracked and uneven sidewalk at condominium complex; unresolved factual issue existed as to whether condominium association should have foreseen that residents would use the sidewalk and be injured "notwithstanding that the condition was obvious"); see also Krol v. City of Orlando, 778 So. 2d 490, 494 (Fla. 5th DCA 2001) (reversing summary judgment on obvious danger grounds against plaintiff injured by tripping on open storm drain that was partially obscured by sidewalk transition, as factual question existed as to plaintiff's ability to see drain beforehand);

11

Collias in re Collias v. Gateway Acad. of Walton Cnty., Inc., 313 So. 3d 163, 168 (Fla. 1st DCA 2021) (reversing grant of summary judgment as to negligence claim based on student's injury caused by running into table during track event, as genuine issues of fact existed as to foreseeability of danger and reasonableness of school's placement of table and choice of event location).

Here, Ortega claimed she was not able to see the concrete gate-arm slab on the day of the incident because it was the same color as the ground in the parking garage and it was not painted or marked. Her expert's report supports this claim. Specifically, Dr. Zollo opined that "the change in elevation at the reported fall area exist[ed] in a disguised or camouflage[d] condition, according to architectural engineering and human factors that are well known and published in scientific literature and that affect public safety standards." Dr. Zollo further opined that based on the unpainted nature of the slab, "the nature of the defect is not readily distinguishable and is not to be considered open and obvious such that oncoming pedestrians, such as Ms. Ortega, could adjust their gait or direction in a timely manner for their own safety." Finally, Dr. Zollo opined that "[t]he condition . . . existed as a trap to normally attentive pedestrians . . . and was likely the direct cause of the injury incident[.]"

12

Based on the foregoing and viewing the record in the light most favorable to Ortega, a material issue of fact existed as to whether the concrete gate-arm slab was open and obvious and whether Turnberry violated its duty to maintain the premises in a reasonably safe condition. Accordingly, summary judgment was improper and must be reversed. See Hilliard v. Speedway Superamerica LLC, 766 So. 2d 1153, 1155 (Fla. 4th DCA 2000) (reasoning that an expert affidavit testifying that proper industry construction and maintenance methods require definition between changes of elevation which are clearly identifiable and that the appellee failed to give proper notice of the change in elevation was evidence of negligence that established a material issue of fact precluding summary judgment); Echevarria, 306 So. 3d at 330 ("In this case, viewing the record and the reasonable inferences therefrom in the light most favorable to the Echevarrias, we conclude there is an issue of material fact as to whether Lennar . . . created a hidden danger (i.e., an optical illusion) on its property that a prudent invitee would not anticipate."); Slaats v. Sandy Lane Residential, LLC, 59 So. 3d 320, 321 (Fla. 3d DCA 2011) ("Here, the plaintiffs presented some evidence that the step down created a dangerous condition. Specifically, Elizabeth testified that she was unable to see the step down because it was uniform in color and the afternoon sun was shining directly in

13

her eyes. Further, the plaintiffs presented the affidavit of an architectural expert stating that the step down presented a unique, special hazard because the drop was hidden and unexpected. Thus, genuine issues of material fact remain unresolved which preclude summary judgment.").

Reversed.